[No. A082565. First Dist., Div. Three. Dec. 28, 1999.]

KELLEY GELINI, Plaintiff and Respondent, v.
KENNETH TISHGART, Defendant and Appellant.

220

COUNSEL

Mortimer Law Offices, Michael Mortimer and A. T. Kippes for Defendant and Appellant.

Rudy, Exelrod, Zieff & True, John M. True III and Lisa M. Guerin for Plaintiff and Respondent.

OPINION

**PARRILLI, J.**—An employee has an attorney write her employer regarding terms and conditions of her employment. The letter seeks to resolve the employer-employee dispute, but suggests possible bases for litigation. The employee is fired because of the letter. Has the employer violated the public policy set forth in Labor Code section 923, exposing himself to liability for wrongful discharge?

According to Labor Code section 923, "the public policy of this State" requires "that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or

their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."[1] The issue in this case is whether this provision protects an individual employee who chose an attorney to represent her in negotiations with her employer over matters affecting only herself.

If the issue presented were one of first impression, we would answer in the negative. The aim of section 923 seems to be the protection of employees' rights to bargain collectively or pursue other mutual remedies. However, the Courts of Appeal have interpreted section 923 to mean that "the individual employee has the right to designate an attorney or other individual to represent him in negotiating terms and conditions of his employment, and that his discharge for so doing constitutes a violation" of the public policy declared in the statute. (*Montalvo v. Zamora* (1970) 7 Cal.App.3d 69, 75 [86 Cal.Rptr. 401]; accord, *Hentzel v. Singer Co.* (1982) 138 Cal.App.3d 290, 296 [188 Cal.Rptr. 159, 35 A.L.R.4th 1015].) Our Supreme Court has referred to this holding with approval. (*Tameny v. Atlantic Ritchfield Co.* (1980) 27 Cal.3d 167, 176 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]; *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 666, fn. 5 [254 Cal.Rptr. 211, 765 P.2d 373].) Therefore, we believe any change on this point must come from the Supreme Court.

## BACKGROUND

Kelley Gelini, an attorney employed in the law office of Kenneth Tishgart, sued Tishgart for (1) pregnancy discrimination under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.); (2) wrongful termination in violation of FEHA and article I, section 8 of the California Constitution; (3) wrongful termination in violation of section 923; (4) intentional infliction of emotional distress; and (5) wrongful termination in breach of an implied contract. Tishgart moved for summary adjudication on the FEHA claim, contending he was not covered by the statute because he had five or fewer employees. Gelini filed no opposition, and the court granted the motion. The other causes of action went to a jury trial. During trial, the court granted Tishgart a directed verdict on the breach of contract cause of action.

Gelini testified that she worked for Tishgart beginning August 22, 1994. Tishgart gave her a salary increase in September of 1995, at which time they discussed giving her some trial work. On October 11, 1995, she told Tishgart she was pregnant. Within a week, Tishgart reduced her hours and pay by

---

[1]Further statutory references are to the Labor Code.

half. Gelini was unhappy and retained counsel, who wrote a letter to Tishgart on November 1, 1995. The letter advised Tishgart he was discriminating against Gelini on account of her pregnancy, which violated FEHA. It suggested the following resolution: (1) Tishgart would retain Gelini full-time until April 19, 1996; (2) Gelini would be entitled to parental leave; (3) she would be further employed by Tishgart only if they both agreed; and (4) Tishgart would give Gelini a positive job reference. On Tuesday, November 7, Tishgart fired Gelini.

The jury returned a special verdict finding that Tishgart did not fire Gelini because she was pregnant, but did fire her in retaliation for the letter sent by her attorney. The jury found that Gelini had suffered emotional distress, but awarded her no damages on that count. She recovered $15,000 in economic damages. The trial court denied Tishgart's motion for judgment notwithstanding the verdict.

## DISCUSSION

On appeal, Tishgart does not quarrel with the jury's factual conclusion that he terminated Gelini's employment in retaliation for the letter he received from her attorney. He raises only legal issues. First, he contends that section 923 does not protect Gelini, because it applies only to collective bargaining or nonunion self-organization among employees. Second, he argues that even if section 923 applies in this case, the elements of a cause of action for wrongful discharge in violation of public policy are not met. These issues are subject to our independent review. (*Pettus v. Cole* (1996) 49 Cal.App.4th 402, 450 [57 Cal.Rptr.2d 46].)

Section 923 provides in full: "In the interpretation and application of this chapter, the public policy of this State is declared as follows:

"Negotiation of terms and conditions of labor should result from voluntary agreement between employer and employees. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers, the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted

activities for the purpose of collective bargaining or other mutual aid or protection."

Tishgart, emphasizing the statute's concluding emphasis on "the purpose of collective bargaining or other mutual aid or protection," insists that section 923 does not protect an individual's designation of a representative to negotiate the terms and conditions of her employment. This reading of the statute was rejected by the *Montalvo* court, as follows:

"Clearly, the declared purpose of . . . section 923 is to guarantee to individual employees full freedom of self-organization and of association with others 'for the purpose of *collective* bargaining or other *mutual* aid or protection,' free from interference or coercion by their employers. (Italics added.) (*Petri Cleaners, Inc.* v. *Automotive Employees etc. Local No. 88* [(1960)] 53 Cal.2d 455, 470 . . . ; *Levy* v. *Superior Court* [(1940)] 15 Cal.2d 692, 704.)

"Not so clear, however, is whether the individual employee has a correlative right to designate an attorney or other individual to act as his representative to negotiate terms and conditions of employment, independent of all other employees of the same employer. On the one hand, attempts to bargain on behalf of a single employee, or of a few, only, of all employees, or of all employees within a particular category of employees, seem to us to be the antithesis of the strength in numbers philosophy which the statute seeks to encourage and to protect. On the other hand, the statute appears also to emphasize that the individual shall have full freedom of choice in the designation of his representative to negotiate the terms and conditions of his employment. We believe it to be within the intent and scope of the statute, by implication, though not expressly declared, that the individual employee has the right to designate an attorney or other individual to represent him in negotiating terms and conditions of his employment, and that his discharge for so doing constitutes a violation of . . . section 923.

"This is not to say, however, that an employer has any legal obligation to enter into negotiations with the attorney or individual so designated. It has been held that an employer has no 'affirmative duty to bargain,' i.e., he does not violate . . . section 923 by refusing to negotiate with a labor organization designated for that purpose by his employees. (*Petri Cleaners, Inc.* v. *Automotive Employees etc. Local No. 88, supra,* 53 Cal.2d 455, 470.) By the same token, he does not violate the statute by refusing to negotiate with an attorney or other representative of the individual employee. No penalty, civil or criminal, attaches for refusing to negotiate. The violation occurs, not in refusing to negotiate, but in discriminating against an employee or employees for exercising his or her rights of self-organization and designation of a representative for the purposes stated in the statute.

"We hold, therefore, that the plaintiffs state a cause of action for civil relief when they allege that they were discharged because they designated an attorney to represent them for the purpose of negotiating terms and conditions of employment." (*Montalvo v. Zamora, supra,* 7 Cal.App.3d at p. 75.)

In *Tameny v. Atlantic Richfield Co., supra,* 27 Cal.3d 167, the seminal case approving tort liability for discharge of an employee in violation of public policy, our Supreme Court cited *Montalvo* as among the Court of Appeal opinions "confirm[ing] the availability of a tort cause of action" by employees "who had been discharged for joining unions or *otherwise exercising their statutory right to choose a bargaining representative.*" (27 Cal.3d at p. 176, italics added.) *Montalvo*'s view that individual employees are protected by section 923 was reaffirmed two years later by the *Hentzel* court, to support the proposition that "California has long maintained a policy of protecting the right of employees to voice their dissatisfaction with working conditions."[2] (*Hentzel v. Singer Co., supra,* 138 Cal.App.3d at p. 296.) Subsequently, our Supreme Court cited *Montalvo* in another landmark wrongful termination decision as an example of a decision "bar[ring] discharge of at-will employees in violation of state policies governing labor-management relations." (*Foley v. Interactive Data Corp., supra,* 47 Cal.3d at p. 666, fn. 5.)

As Tishgart points out, the *Hentzel* court expressed some misgiving about the factual underpinnings of *Montalvo*'s holding: "While the court in *Montalvo* spoke of section 923 as giving rise to rights on the part of individual employees, the opinion reveals that in fact several employees banded together in designating an attorney to represent them." (*Hentzel v. Singer Co., supra,* 138 Cal.App.3d at p. 297.) Before turning to the facts of *Montalvo*, we note that *Hentzel* nevertheless relies on *Montalvo* to contrast California's labor statutes with the federal National Labor Relations Act, which protects only concerted activity by a group of employees. On the strength of this distinction, the *Hentzel* court disposed of "any problem of federal preemption." (*Hentzel v. Singer Co., supra,* 138 Cal.App.3d at pp. 296-297, fn. 4.)

*Montalvo*, like *Hentzel*, arose on appeal from a judgment of dismissal after the employer successfully demurred, and thus the facts were limited to those pleaded in the complaint. (*Montalvo v. Zamora, supra,* 7 Cal.App.3d at p. 73; *Hentzel v. Singer Co., supra,* 138 Cal.App.3d at p. 293.) The *Montalvo* plaintiffs were agricultural workers, a husband, wife, and the husband's father. The husband learned that the state Industrial Welfare Commission had adopted an order requiring a higher wage for female agricultural workers

---

[2] In *Hentzel,* the plaintiff alleged he was fired for complaining about other employees smoking in the workplace. (*Hentzel v. Singer Co., supra,* 138 Cal.App.3d at p. 293.)

than his wife was receiving. He contacted an attorney regarding his wife's right to a higher wage, and regarding certain deductions the employer was taking from all three plaintiffs' paychecks. The attorney wrote a letter to the employer, which was incorporated by reference into the complaint. From the *Montalvo* court's summary of the letter, it seems the attorney determined there was no valid complaint regarding the wage deductions, because the letter addressed only the wife's right to a higher wage. The employer fired all three plaintiffs upon receipt of the letter. All three sued for discharge in violation of their right to self-organize and appoint a representative to negotiate the terms and conditions of their employment. (*Montalvo v. Zamora, supra,* 7 Cal.App.3d at pp. 72-73.)

It is not clear why the *Montalvo* court analyzed section 923 in terms of an individual employee's right to designate a representative, when all three plaintiffs engaged the attorney to negotiate with their employer. Perhaps it was because only the wife had a claim for a higher wage, which was the subject of the attorney's letter to the employer. In any event, the *Montalvo* court was unequivocal in its interpretation of the scope of section 923. *Montalvo* has been followed by *Hentzel* and cited with approval by *Tameny* and *Foley.* Given this history, we believe principles of stare decisis compel us to follow *Montalvo* despite our reservations about its reading of section 923.

Tishgart argues in the alternative that if section 923 protects Gelini, the public policy expressed in the statute nevertheless fails to meet the requirements listed in *Stevenson v. Superior Court* (1997) 16 Cal.4th 880 [66 Cal.Rptr.2d 888, 941 P.2d 1157]. ▆▆ There, our Supreme Court stated that "for a policy to support a wrongful discharge claim, it must be: (1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental." (16 Cal.4th at p. 894.) Tishgart's arguments on the first three elements are perfunctory; he relies principally on the assertion that the public policy announced in section 923 is not substantial and fundamental. ▆▆ We are satisfied that all four factors outlined in *Stevenson* are met by the terms of section 923, as construed by *Montalvo.*

Under *Montalvo,* the public policy establishing an individual employee's freedom to designate a representative to negotiate with her employer is delineated in section 923. The fact that the statute explicitly frames this freedom as a matter of public policy, involving a balancing of the interests of government, corporate and other forms of business organization, labor organizations, and individual employees, clearly expresses the Legislature's view

that public rather than purely private interests are at stake. Section 923, its interpretation by the *Montalvo* and *Hentzel* courts, and the Supreme Court's citations in *Tameny* and *Foley* were on the books for many years before Gelini was discharged. These considerations also contribute to our conclusion that the public policy at issue here is substantial and fundamental. In addition to the balance of power considerations referred to by the Legislature in section 923 (enacted in 1937), we note that the world of employment today is subject to a vast array of legislative and administrative regulations, at the federal, state, and local levels. Whether this is a good or a bad development, the government as well as the individual employee has a substantial interest in assuring that every worker may seek guidance in penetrating the legal thicket without fear of retaliation.

■■■ "A public policy exception carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions strikes the proper balance among the interests of employers, employees and the public. The employer is bound, at a minimum, to know the fundamental public policies of the state and nation as expressed in their constitutions and statutes; so limited, the public policy exception presents no impediment to employers that operate within the bounds of law. Employees are protected against employer actions that contravene fundamental state policy. And society's interests are served through a more stable job market, in which its most important policies are safeguarded." (*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1095 [4 Cal.Rptr.2d 874, 824 P.2d 680], overruled on another point in *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 80, fn. 6 [78 Cal.Rptr.2d 16, 960 P.2d 1046].) Tishgart protests that he was shocked to discover he might be held liable for discriminating against Gelini for her decision to designate a representative to negotiate her dispute over wages and hours. He rightly notes that our Supreme Court has taken care to restrict claims for wrongful discharge in violation of public policy to those in which "employers have adequate notice of the conduct that will subject them to tort liability to the employees they discharge." (*Stevenson v. Superior Court*, *supra*, 16 Cal.4th at p. 889.)

Tishgart's lack of notice argument is particularly difficult to sustain for an employer who is an attorney. The *Montalvo* holding is not an obscure one. (See, e.g., 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 307, p. 302; 4 Cal. Employment Law (1999) § 60.03[2][o], pp. 60-21, 60-22.) We note that at trial, Tishgart himself asserted other reasons for firing Gelini (which the jury found to be pretextual). According to Gelini, he told her he was letting her go for financial reasons. According to Tishgart's trial testimony, he fired Gelini both for financial reasons and because their relationship had deteriorated. He adamantly denied firing her because of the letter from her attorney. In any

event, we are certain that in these unfortunately litigious times, any reasonable employer would move carefully before firing an employee just because the employee had retained an attorney or other agent to bargain on her behalf.

We recognize that it is not obvious from the terms of section 923 whether the statute extends its protections to individual employees. On the one hand, the Legislature chose to employ the singular when it declared its intent that ". . . the *individual* workman have full freedom of association, self-organization, and designation of representatives of *his* own choosing, to negotiate the terms and conditions of *his* employment, and that *he* shall be free from the interference, restraint, or coercion of employers of labor . . . ." (*Ibid.*; italics added.) On the other hand, the Legislature expressed the view that "the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor," and section 923 guarantees workers the right to designate their own representatives "in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." It seems anomalous for the Legislature to have emphasized individual freedom while at the same time limiting the protection of section 923 to concerted action, arguably leaving the lone employee unprotected where two employees would be covered.

We believe the fairest reading of the statutory terms, taken as whole, is that the Legislature meant to protect individual workers only insofar as they band together to negotiate with their employer. The construction of section 923 by the courts, however, finds some support in the terms of the statute, and has placed employers on notice that the statute protects individual employees. We conclude it is only appropriate for our Supreme Court to alter that settled interpretation.

### DISPOSITION

The judgment is affirmed. Gelini shall recover her costs on appeal.

McGuiness, P. J., and Walker, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 22, 2000.