[No. B187795. Second Dist., Div. Six. Sept. 19, 2007.]

MICHAELENA FITZ-GERALD et al., Plaintiffs and Appellants, v. SKYWEST, INC., Defendant and Respondent.

412

COUNSEL

Pine & Pine, Norman Pine, Beverly Tillett Pine; Anticouni & Associates, Bruce N. Anticouni; Slovak, Baron & Empey, Thomas Slovak and Lucien Van Hulle for Plaintiffs and Appellants.

Paul D. Fogel, Margaret A. Grignon, Raymond A. Cardozo, Dennis Peter Maio, Reed Smith; Ford & Harrison, Norman A. Quandt; and Patricia T. Stambelos for Defendant and Respondent.

OPINION

YEGAN, J.—Michaelena Fitz-Gerald and Romead Neilson appeal from a summary judgment granted in favor of SkyWest, Inc. (SkyWest), on their class action for alleged violations of California labor law regarding minimum wages, overtime, and meal/rest breaks. Appellants are suing individually and on behalf of former and current SkyWest flight attendants (FA's) working for SkyWest in California. The trial court granted summary judgment in favor of SkyWest, ruling inter alia that the action was preempted by the Railway Labor Act (45 U.S.C. § 151 et seq.). We affirm.

*SkyWest and Its Flight Attendants*

SkyWest is a regional air carrier with headquarters in Utah. It operates as United Express in 91 cities and provides 1,500 daily flights to 120 cities in 32 states and Canada. SkyWest also provides air carrier services for Delta Air Lines and Continental Airlines.

SkyWest FA's receive flight pay (also referred to as "block to block time") from the time the aircraft blocks are removed at takeoff until the aircraft reaches its destination. In 2001, flight pay ranged from $17.50 per hour to $31.20 an hour depending on seniority and the work schedule. Top-end flight pay for FA's is currently $37.07 an hour. FA's also receive a per diem wage of $1.60 an hour for block time while the aircraft is readied for flight, while passengers board and disembark, and for flight standbys and stayovers. On any given workday, the ratio of block time to flight time is about two to one.

## The Complaint

California Industrial Welfare Commission Order No. 9-2001 (IWC Order No. 9-2001) requires that certain persons employed in the transportation industry be paid not less than the minimum wage and receive meal/rest breaks and overtime. The complaint alleges that SkyWest FA's are not provided uninterrupted rest periods or meal breaks. Nor do FA's receive overtime or state minimum wage for block time. The complaint seeks damages for unpaid minimum wages (first cause of action; Lab. Code, § 1194), unpaid meal and rest breaks (second cause of action), overtime (third cause of action), waiting time penalties (fourth cause of action; Lab. Code, § 203), and relief under the unfair business practices act (fifth cause of action; Bus. & Prof. Code, § 17200 et seq.).

## The Summary Judgment Motion

The moving papers establish that FA compensation is based on the SkyWest Airlines Crewmember Policy Manual, which has all the attributes of a collective bargaining agreement (CBA) and was negotiated by the SkyWest In-Flight Association (SIA) and SkyWest. SIA is an employee association and the exclusive bargaining representative for SkyWest FA's. It has 1,100 members and has negotiated compensation and workplace rules for the past 10 years. About every two years, a new SIA/SkyWest compensation agreement is negotiated, voted on by FA's, and if approved, incorporated into the SkyWest Crewmember Policy Manual (herein referred to as CBA).

Pursuant to the CBA, FA's bid each month for their work schedules and receive flight pay, per diem block pay, vacation and holiday pay, and compensation for flight cancellations and overnight stayovers.[1] The compensation methodology is standard in the airline industry. SkyWest FA's are guaranteed 3.75 hours' flight pay each workday. The CBA provides that FA's may not eat meals during critical phases of flight and that FAA regulations prohibit FA's from working more than 14 hours at a stretch.

As indicated, the trial court ruled that the action was preempted by the federal Railway Labor Act (RLA; 45 U.S.C. § 151 et seq.) and that application of IWC Order No. 9-2001 would violate the Airline Deregulation Act of 1978 (ADA; 49 U.S.C. § 41713(b)(1)). We review the order granting summary judgment de novo. (*Department of Industrial Relations v. Nielsen Construction Co.* (1996) 51 Cal.App.4th 1016, 1024 [59 Cal.Rptr.2d 785].)

---

[1] Per diem block time includes standby time and layovers. Assuming an FA stays in a hotel because of a flight stayover, SkyWest pays block time pay ($1.50 or $1.60 an hour) while the FA sleeps, eats, watches television, and engages in other nonwork activities.

## IWC Order No. 9-2001 and Armenta

█ The California Industrial Welfare Commission "is the state agency empowered to formulate regulations (known as wage orders) governing employment in the State of California. [Citations.]" (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 561 [59 Cal.Rptr.2d 186, 927 P.2d 296].) IWC Order No. 9-2001 applies to the transportation industry (Cal. Code Regs., tit. 8, § 11090) and provides: "Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise." (IWC Order No. 9-2001, subd. 4(B).)

The complaint alleges that block time pay ($1.60 per hour) violates California minimum wage law. SkyWest asserts that FA compensation averages $23.13 an hour (flight time plus block time, averaged over a month), a pay rate that is substantially greater than the state minimum wage.

Citing *Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314 [37 Cal.Rptr.3d 460] (*Armenta*), appellants argue that wage averaging does not trump state minimum wage law. In *Armenta*, a company that serviced utility poles did not pay its employees for travel time and time spent loading equipment and supplies. We held that California's labor statutes reflect a strong public policy in favor of full payment of wages for all hours worked. "[T]he FLSA [Fair Labor Standards Act] model of averaging all hours worked 'in any work week' to compute an employer's minimum wage obligation under California law is inappropriate. The minimum wage standard applies to each hour worked by respondents for which they were not paid." (*Id.*, at p. 324.)

*Armenta* is distinguishable on several grounds: it did not involve an interstate air carrier, it did not involve the RLA or a CBA sanctioned under the RLA, and it did not involve a state wage order that contained an RLA exemption. In *Armenta*, the employer violated its own CBA and written employment policies which required that employees be paid for time spent driving company vehicles to and from job sites. (*Armenta, supra*, 135 Cal.App.4th at p. 319.) The Division of Labor Standards Enforcement issued an opinion letter stating that the employees were entitled to compensation for all hours worked. (*Id.*, at pp. 319–320.)

We concluded that the Division of Labor Standards Enforcement opinion letter did not have the force of law but the reasoning expressed in the letter was persuasive. (*Armenta, supra*, 135 Cal.App.4th at p. 324.) The opinion letter noted that Labor Code sections 221, 222, and 223 prohibit an employer from "withholding from the employee, or secretly paying to the employee, some amount less than the employee's *actual. agreed wages* for work performed by the employee." (135 Cal.App.4th at p. 320, italics added.) We held that the state "minimum wage standard applies to each hour worked by [employees] for which they were not paid." (*Id.*, at p. 324.) An employer may not invoke a federal wage averaging formula to defend against a minimum wage claim where the employer, in violation of its own wage agreement, pays no wage for an hour worked. "California's labor statutes reflect a strong public policy in favor of full payment of wages for all hours worked." (*Ibid.*)[2]

Unlike *Armenta*, here there is no evidence that SkyWest pays FA's less than what was collectively bargained for. As discussed in *Armenta*, Labor Code "[s]ections 221, 222, and 223 articulate the princip[le] that all hours must be paid at the statutory or *agreed rate* . . . ." (*Armenta, supra*, 135 Cal.App.4th at p. 323, italics added.) Here the agreed rate is set forth in the SkyWest CBA which was voted on and approved by SkyWest FA's. Under appellants' construction of the law, IWC Order No. 9-2001 sets a minimum wage standard for every interstate airline carrier regardless of how much it burdens interstate commerce, an argument that was properly rejected by the trial court.

■ The RLA provides that state law rights and obligations that do not exist independently of a collective bargaining agreement may be waived or altered by the collective bargaining agreement. (See, e.g., *Allis-Chalmers Corp. v. Lueck* (1985) 471 U.S. 202, 213 [85 L.Ed.2d 206, 216, 105 S.Ct. 1904]; *Adames v. Executive Airlines, Inc.* (1st Cir. 2001) 258 F.3d 7, 12.) The purpose of the RLA is to bring about stable relations between labor and management in the national transportation industry. (*Thibodeaux v. Executive Jet Intern., Inc.* (5th Cir. 2003) 328 F.3d 742, 754.) "Congress has long concerned itself with minimizing interruptions in the Nation's transportation services by strikes and labor disputes and has made successive attempts to establish effective machinery to resolve disputes not only as to wages, hours, and working conditions, the so-called major disputes connected with a negotiation of contracts or alterations in them, but also as to the interpretation

---

[2] Labor Code section 222 provides: "It shall be unlawful, in case of *any wage agreement* arrived at through collective bargaining, either wilfully or unlawfully or with intent to defraud an employee, . . . to withhold from said employee any part of the wage agreed upon." (Italics added.) Labor Code section 223 provides: "Where any statute or *contract* requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract." (Italics added.)

and application of existing contracts . . . ." (*Machinists v. Central Airlines* (1963) 372 U.S. 682, 687 [10 L.Ed.2d 67, 72, 83 S.Ct. 956], fn. omitted.)

### *Railway Labor Act*

█ The RLA regulates labor relations between common interstate air carriers and their employees. (45 U.S.C. § 181; *DeTomaso v. Pan American World Airways, Inc.* (1987) 43 Cal.3d 517, 525 [235 Cal.Rptr. 292, 733 P.2d 614].) It requires that carriers "exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof." (45 U.S.C. § 152.) This is the "heart" of the RLA. (*Railroad Trainmen v. Terminal Co.* (1969) 394 U.S. 369, 377–378 [22 L.Ed.2d 344, 354, 89 S.Ct. 1109].)

*United Air Lines, Inc. v. Industrial Welfare Com.* (1963) 211 Cal.App.2d 729 [28 Cal.Rptr. 238] (disapproved on another point in *Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 728, fn. 15 [166 Cal.Rptr. 331, 613 P.2d 579]) illustrates the conflict that can arise between a state wage order and the RLA. There, the Court of Appeal held that an IWC order requiring employers to pay for flight attendant uniforms did not apply to an interstate airline because the collective bargaining agreement provided that the cost of uniforms was to be paid in part by the employee. The court concluded that the IWC order was preempted by the RLA and that enforcement of the IWC order would burden interstate commerce: "A stewardess based in California gets a free uniform even though most, or perhaps all of her work is on interstate planes. A stewardess based outside of California who works on planes coming into California does not. Likewise, on interstate flights there might very well be two stewardesses working side by side, one with a free uniform, the other with a uniform a part only of the cost of which United paid. Again, if a stewardess based in another state and having under the collective bargaining agreement paid a portion of the cost of her uniform, is temporarily based in California, would her money have to be repaid to her? Such discrimination is bound to cause personnel troubles and to that extent, at least, a burden on interstate commerce. The situations above mentioned point out strongly the interference of the regulation with interstate commerce and the necessity for a uniform rule throughout the carrier's system." (211 Cal.App.2d at pp. 748–749.)

### *Overtime Wages*

█ IWC Order No. 9-2001, subdivision 1(E) contains an RLA exemption and provides that overtime wages do not have to be paid to "employees who have entered into a collective bargaining agreement under and in accordance

with the [RLA], 45 U.S.C. Sections 151 et seq." Appellants assert there is no CBA because SkyWest is a nonunion employer. The argument is without merit.

█ Under the RLA, airline employees have the right to organize and bargain collectively through representatives of their own choosing. (45 U.S.C. § 152.) The RLA provides that "the term 'representative' means any person or persons, labor union, organization, or corporation *designated either by a carrier or group of carriers or by its or their employees*, to act for it or them." (45 U.S.C. § 151, italics added.) "There are no qualifiers attached to the [RLA's] simple definition of 'representative.' The 'representative' of a craft of employees is, simply, a person or union [or an association] designated to act on their behalf, to accomplish what they seek to accomplish, and is not necessarily a man [or woman] for all seasons." (*Russell v. National Mediation Bd.* (5th Cir. 1983) 714 F.2d 1332, 1341.)

California law is consistent with the RLA and provides that employees have the right to organize and collectively bargain through a representative. (See *Safeway Stores v. Retail Clerks etc. Assn.* (1953) 41 Cal.2d 567, 576–577 [261 P.2d 721]; *Gelini v. Tishgart* (1999) 77 Cal.App.4th 219, 226 [91 Cal.Rptr.2d 447].) Labor Code section 923 declares that it is "the public policy of this State" "that the individual work[er] have full freedom of association, self-organization, and designation of representatives of his [or her] own choosing, to negotiate the terms and conditions of his [or her] employment, and that he [or she] shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."

Here the CBA was negotiated by SIA, an employee organization recognized by SkyWest and SkyWest FA's. For more than 10 years, SIA has negotiated wage and benefit plans that have been approved by SkyWest FA's and made a part of the SkyWest Crewmember Policy Manual. Appellants cite no authority that the RLA exemption for overtime wages in IWC Order No. 9-2001 does not apply to CBA's negotiated by an employee organization such as SIA.

### State Minimum Wage and Meal/Rest Breaks

█ Although the RLA contains no specific language with respect to state minimum wage law and meals/rest breaks, our courts have interpreted the RLA to preempt state law causes of action that depend upon interpretation

of a CBA. (*Hawaiian Airlines, Inc. v. Norris* (1994) 512 U.S. 246, 253–254 [129 L.Ed.2d 203, 211–212, 114 S.Ct. 2239]; *Soldinger v. Northwest Airlines, Inc.* (1996) 51 Cal.App.4th 345, 360 [58 Cal.Rptr.2d 747].) Under the RLA, interpretation of a CBA lies in the exclusive jurisdiction of arbitrational bodies created by the RLA. (See *Hawaiian Airlines, Inc. v. Norris, supra,* 512 U.S. at pp. 254–256 [129 L.Ed.2d at pp. 212–213]; *Espinal v. Northwest Airlines* (9th Cir. 1996) 90 F.3d 1452, 1455–1456.) "The key [to RLA preemption] is whether the CBA must be interpreted or applied. [Citation.]" (*Soldinger v. Northwest Airlines, Inc., supra,* 51 Cal.App.4th at p. 360.)[3] In *DeTomaso v. Pan American World Airways, Inc., supra,* 43 Cal.3d at page 529, our state Supreme Court held that RLA preemption extends to "any claim premised on facts inextricably intertwined with matters subject to the grievance procedures of the collective bargaining agreement."

Federal courts use a similar test. In *Adames v. Executive Airlines, Inc., supra,* 258 F.3d 7, a federal court held that an action under Puerto Rico law for wages, overtime pay, and meal breaks was preempted by the RLA. Citing United States Supreme Court cases,[4] the court concluded that if state law claims are " 'inextricably intertwined' with the meaning of terms in the CBA," the state law claims are preempted by the RLA. (258 F.3d at p. 12.) "In such instances, state law 'must yield to the developing federal common law, lest common terms in bargaining agreements be given different and potentially inconsistent interpretations in different jurisdictions.' [Citation.]" (*Ibid.*)

---

[3] In *Soldinger v. Northwest Airlines, Inc., supra,* 51 Cal.App.4th at pages 358–359, our colleagues in Division Two described the rationale for RLA preemption: " 'Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes. [Citations.]' (*Hawaiian Airlines, Inc. v. Norris, supra,* 512 U.S. at p. 252 [129 L.Ed.2d at p. 211, 114 S.Ct. at p. 2243].) Congress wanted to avoid having the states apply their own state law principles to interpret a federal labor law collective bargaining agreement, leading to inconsistent results. 'To realize this goal, the RLA establishes a mandatory arbitral mechanism for "the prompt and orderly settlement" of two classes of disputes. [Citation.] The first class, those concerning "rates of pay, rules or working conditions," [citation], are deemed "major" disputes. Major disputes relate to " 'the formation of collective [bargaining] agreements or efforts to secure them.' " [Citation.] The second class of disputes, known as "minor" disputes, "gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a. Minor disputes involve "controversies over the meaning of an existing collective bargaining agreement [CBA] in a particular fact situation." [Citation.] Thus, "major disputes seek to create contractual rights, minor disputes to enforce them." [Citation.]' (*Hawaiian Airlines, Inc. v. Norris, supra,* 512 U.S. at pp. 252–253 [129 L.Ed.2d at p. 211, 114 S.Ct. at pp. 2243–2244].) [¶] Both major and minor disputes are preempted. (*Hawaiian Airlines, Inc. v. Norris, supra,* 512 U.S. at pp. 252–254 [129 L.Ed.2d at pp. 210–212, 114 S.Ct. at pp. 2243–2244].)"

[4] *Hawaiian Airlines, Inc. v. Norris, supra,* 512 U.S. 246 [129 L.Ed.2d 203]; *Allis-Chalmers Corp. v. Lueck, supra,* 471 U.S. 202 [85 L.Ed.2d 206]; *Livadas v. Bradshaw* (1994) 512 U.S. 107 [129 L.Ed.2d 93, 114 S.Ct. 2068].

Citing *Valles v. Ivy Hill Corp.* (9th Cir. 2005) 410 F.3d 1071 and *Bonilla v. Starwood Hotels & Resorts* (C.D.Cal. 2005) 407 F.Supp.2d 1107, appellants argue that the statutory right to meal breaks and rest periods is "non-negotiable" and may not be subject to a collective bargaining agreement opt-out provision. Those cases are inapposite and do not involve the RLA or an interstate air carrier.

SkyWest FA's collectively bargained for a compensation system that guarantees 3.75 hours' flight pay each work shift. The CBA provides for a bundle of benefits that include flight pay, block time, overtime, flight standbys and layovers, vacation, and meal/rest breaks. Rest periods and meal breaks are referenced in the SIA/SkyWest CBA which incorporates FAA regulations that FA's may not eat meals "during critical phases of flight."

Assuming, arguendo, that the trial court found meal and rest break violations, it would have to determine whether the FA was receiving flight pay or block time pay when the violation occurred. IWC Order No. 9-2001, subdivisions 11(D), 12(B), states that the damages are "one (1) hour of pay at the employee's *regular rate of compensation* . . . ."[5] (Italics added.) The trial court, however, could not determine the regular rate of compensation without interpreting the CBA. (See, e.g., *Adames v. Executive Airlines, Inc., supra,* 258 F.3d at p. 15.)

A similar preemption problem arose in *Burgos v. Executive Air, Inc.* (D.P.R. 1996) 914 F.Supp. 792. There, a flight attendant sued for minimum wage and overtime pay under Puerto Rico law. The federal court held that the action was preempted by the RLA because flight attendant compensation was based on a CBA that took into account flight time, on-duty time, and a flight time guarantee. "[P]laintiff's status under Puerto Rico law depends upon the interaction of three separate articles of the CBA. Whether she 'worked'—broadly defined as hours 'on duty'—more than the statutorily prescribed maximums is not dispositive of her claim since her pay was not tied to hours worked, but rather to her guarantee. Determining whether she was under-paid would require ascertaining her 'flight time' both for that week and for the month, as well as her on-duty time. After calculating these figures, the CBA would need to be consulted to determine both base and overtime pay. Then,

---

[5] IWC Order No. 9-2001, subdivision 11(D) provides: "If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided." The same formula applies where the employer fails to provide an employee a rest period. (IWC Order No. 9-2001, subd. 12(B).)

her total pay, separating her guarantee from overtime pay, would need to be compared to on-duty time in order to calculate her effective hourly salaries (base and overtime). Only at this point could Burgos' status under the law be determined." (914 F.Supp. at pp. 796–797.)

*Waiting Time Penalties and Unfair Business Practices*

■ Appellants' claims for state minimum wages (first cause of action) and meal/break time damages (second cause of action) are preempted by the RLA. With respect to overtime wages (third cause of action), IWC Order No. 9-2001 exempts SkyWest because the claim is subject to a CBA that was negotiated and approved by SkyWest FA's. Because the first, second, and third causes of action are preempted by the RLA, the trial court properly ruled that the fourth cause of action for waiting time penalties (Lab. Code, § 203) and fifth cause of action for violation of the Unfair Business Practices Act were barred.

*Interstate Commerce Clause*

The trial court also correctly ruled that application of IWC Order No. 9-2001 would substantially burden interstate commerce. The purpose of the RLA is to bring about stable relations between labor and management in the national transportation industry. (*Thibodeaux v. Executive Jet Intern., Inc., supra*, 328 F.3d at p. 754.) "Congress has long concerned itself with minimizing interruptions in the Nation's transportation services by strikes and labor disputes and has made successive attempts to establish effective machinery to resolve disputes not only as to wages, hours, and working conditions, the so-called major disputes connected with a negotiation of contracts or alterations in them, but also as to the interpretation and application of existing contracts . . . ." (*Machinists v. Central Airlines, supra*, 372 U.S. at p. 687 [10 L.Ed.2d 67, 72], fn. omitted.)[6]

---

[6] Appellants argue that the commerce clause (U.S. Const., art. I, § 8, cl. 3) was not alleged as an affirmative defense, but waived the point and are precluded from asserting it for the first time on appeal. (*Lyles v. State of California* (2007) 153 Cal.App.4th 281, 284, fn. 2 [62 Cal.Rptr.3d 696]; *Roybal v. University Ford* (1989) 207 Cal.App.3d 1080, 1088 [255 Cal.Rptr. 469].) The commerce clause issue was fully briefed and argued at the hearing on the summary judgment motion.

*Airline Deregulation Act*

■ Alternatively, the trial court ruled that the complaint was barred by the ADA. (49 U.S.C. § 41713(b)(1).) The ADA provides that a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service" of an air carrier. (49 U.S.C. § 41713(b)(1); see *Vinnick v. Delta Airlines, Inc.* (2001) 93 Cal.App.4th 859, 864 [113 Cal.Rptr.2d 471].) In two cases the United States Supreme Court has held that claims under a state unfair business practices statute are preempted by the ADA because the state claims would impose economic regulation on airlines. (*Morales v. Trans World Airlines, Inc.* (1992) 504 U.S. 374, 388–389 [119 L.Ed.2d. 157, 170–171, 112 S.Ct. 2031] [class action based on frequent flier program]; *American Airlines, Inc. v. Wolens* (1995) 513 U.S. 219, 228 [130 L.Ed.2d 715, 725, 115 S.Ct. 817] [same]; see also *In re JetBlue Airways Corp. Privacy Litigation* (E.D.N.Y. 2005) 379 F.Supp.2d 299, 315–316 [action brought under California Unfair Business Practices Act preempted by ADA].)

■ Based on these federal cases, we conclude that the ADA bars the fifth cause of action for relief under the California Unfair Business Practices Act. (Bus. & Prof. Code, § 17200 et seq.) SkyWest, however, cites no authority that the ADA preempts actions to enforce state minimum wage laws or state laws governing meal/rest breaks. Although the ADA has been broadly interpreted as preempting state "enforcement actions having a connection with, or reference to, airline 'rates, routes, or services,' " it has its limits.[7] (*Morales v. Trans World Airlines, Inc. supra,* 504 U.S. at p. 384 [119 L.Ed.2d at pp. 167–168].) If the rule was otherwise, "any string of contingencies is sufficient to establish a connection with price, route or service, [and] there will be no end to ADA preemption. [Citation.]" (*Air Transport v. City and County of San Francisco* (N.D.Cal. 1998) 992 F.Supp. 1149, 1183.)

---

[7] SkyWest argues that application of state minimum wage law will result in higher fares, fewer routes, and less service, but the connection is tenuous. A state or local law is " ' "related to" ' " a price route or service if it has " ' 'a connection with, or reference to' " a price, route, or service. (*American Airlines, Inc. v. Wolens, supra,* 513 U.S. at p. 223 [130 L.Ed.2d at pp. 722–723].) "Airlines' 'rates' and 'routes' generally refer to the point-to-point transport of passengers. 'Rates' indicates price; 'routes' refers to courses of travel. It therefore follows that 'service,' when juxtaposed to 'rates' and 'routes,' refers to such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided (as in, 'This airline provides service from Tucson to New York twice a day.') To interpret 'service' more broadly is to ignore the context of its use; and, it effectively would result in the preemption of virtually everything an airline does. It seems clear to us that that is not what Congress intended." (*Charas v. Trans World Airlines, Inc.* (9th Cir. 1998) 160 F.3d 1259, 1265–1266.)

*Conclusion*

The judgment (order granting summary judgment) is affirmed. SkyWest is awarded costs on appeal.

Gilbert, P. J., and Perren, J., concurred.

A petition for a rehearing was denied October 16, 2007, and the opinion was modified to read as printed above.