Filed 10/16/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| AMANDA VALENCIA, | B255199 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC421485) |
| v. | |
| SCIS AIR SECURITY CORPORATION, | |
| Defendant and Respondent. | |

APPEAL from orders and a judgment of the Superior Court of Los Angeles County, Joseph R. Kalin (Retired Judge of the L.A. Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) and John Segal, Judges. Reversed.

Law Offices of Louis Benowitz and Louis Benowitz for Plaintiff and Appellant.

AlvaradoSmith, Raul F. Salinas, Mary M. Monroe; Elrod, Brian A. Farlow and David W. Elrod for Defendant and Respondent.

_____

The issue on appeal is a threshold one: whether Amanda Valencia's (Valencia) claims that SCIS Air Security Corporation (SCIS) violated California meal and rest break laws and wage laws are preempted by the federal Airline Deregulation Act (FADA). The trial court granted summary adjudication finding that Valencia's claims are preempted and, based on that ruling, denied Valencia's motion to certify certain classes. Because it is pure speculation and conjecture that requiring SCIS to provide meal and rest breaks consistent with California labor and employment law would have any relation to airline prices, routes, or services, we reverse and remand for further proceedings consistent with this opinion. We do not reach the merits of whether class certification is appropriate or whether SCIS complied with those state laws.

## BACKGROUND

### I. Facts of the case

#### A. *California meal and rest break laws and wage laws*

California state laws require employers to provide meal and rest breaks. (Lab. Code,[1] §§ 512, subd. (a), 226.7.) During meal breaks, employers must relieve employees of all work duties. (§ 226.7, subd. (b).) If a required rest or meal break is not provided, the employer must provide the employee one additional hour of pay. (§ 226.7, subd. (c).) Further, California state laws require employers to pay for time worked and at least minimum wage for each hour. (§ 1194.)

#### B. *Federal legislation regarding airlines*

Congress passed the FADA to reduce federal government regulation in the airline industry and instead allow competition to rule the market, with the goal of decreased prices and improved quality of services for customers. (*Northwest, Inc. v. Ginsberg* (2014) __ U.S. __ [134 S.Ct. 1422, 1428, 188 L.Ed.2d 538, 546] (*Northwest*).) To prevent state government regulation from in turn restricting that new freedom, Congress enacted a provision on the scope of federal preemption: no state may enact or enforce a

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

law "related to a price, route, or service of an air carrier." (*Ibid.*; 49 U.S.C. § 41713(b)(1).)

### C. SCIS provides security services for airlines' catering operations.

Airlines hire SCIS to provide security services for their in-flight catering operations. Specifically, SCIS employees perform security checks on catering equipment on arriving and departing planes. For example, they search the catered food for weapons and then seal the food carts before flights. For arriving planes, SCIS employees must perform security checks whenever the flights arrive, whether on time or delayed. Flight delays, as anyone who has flown recently is well aware, may occur due to inclement weather, cascading flight delays, and security alerts. For departing planes, SCIS employees must perform the security checks as soon as possible to prevent any further flight delays.

While the parties agree SCIS employees miss some scheduled breaks because they must return to work during emergencies and that SCIS does not comply with certain California state laws, the parties disagree on how often that occurs, how SCIS handles those break interruptions, and whether SCIS has an official policy in effect.

Valencia argues SCIS never relieves employees of their work duties during meal breaks—and thus never provides proper breaks at all—and does not compensate for such breaks, whether interrupted or not. Valencia cites testimony from SCIS's California District Director, who testified that employees have a duty to respond to emergencies whether they are on break or not. If an emergency interrupts a meal break, the employee must return to work and cut the break short. Further, Valencia argues that SCIS requires employees to carry walkie-talkies or cell phones while working and, even during breaks, must answer them. Further, SCIS's General Rules of Conduct state that employees must remain in the work area; Valencia notes that the written policy makes no express exception for rest or meal breaks. Valencia alleges that only after she filed this lawsuit did SCIS issue a new written policy finally requiring that employees be relieved of all work-related duties during breaks but, even then, SCIS still does nothing to enforce the policy.

3

SCIS responds that such interrupted meal and rest breaks occur only occasionally if not rarely. SCIS claims it has no company-wide policy and instead employees were responsible for scheduling (or missing) their own rest and meal breaks. SCIS claims that employees can be compensated for missed rest and meal breaks by completing a time record adjustment form. SCIS also claims that it does not require its employees to remain on site during the meal break, also citing testimony from its California District Director. As for the SCIS General Rules of Conduct that employees must remain in the work area, SCIS cites testimony from its corporate representative that that provision did not apply to meal breaks. As for cell phones, SCIS claims there is no evidence of a written policy requiring employees to carry communication devices or respond to them immediately during a meal break.

### D.  *Valencia is a former employee of SCIS.*

Valencia worked for SCIS as a security coordinator at Los Angeles International Airport from 2007 to 2009.

## II.  **Procedural history**

### A.  *Valencia brings this lawsuit against SCIS.*

In 2009, Valencia initiated this suit alleging that SCIS violated state labor and unfair competition laws, specifically the following causes of action: (1) failure to pay wages for all hours worked, such as requiring Valencia to work before clocking in and after clocking out and not paying for those times, (2) failure to pay overtime wages, (3) failure to provide required meal breaks, (4) failure to provide required rest breaks, (5) paying a lower wage than the statutory minimum, as SCIS did not pay for all hours worked, overtime, and the additional hour for each missed rest and meal break, (6) failure to provide accurate wage statements, as SCIS's statements did not reflect all hours worked or the appropriate pay rates, (7) failure to timely pay all wages upon termination of employment, (8) unfair competition, as SCIS's conduct allowed it a competitive advantage over other companies that did comply with California labor laws, and (9) civil penalties allowed under section 2699 for the labor law violations alleged above.

### B. Trial court grants summary adjudication as to some of SCIS's claims.

The trial court grouped Valencia's claims into those related to rest and meal breaks (claims 3, 4, and 8) and those related to wages (claims 1–2, 5–7, and 9). The trial court believed that while SCIS may not have to provide the rest and meal breaks as required under California state law because of the significant impact on security and disruption to travel services, SCIS nevertheless has to pay Valencia for its actions under California state wage laws. Therefore, the trial court held the claims of the former group are preempted by the FADA (and thus granted summary adjudication) but the latter claims are not (and thus denied summary adjudication).

### C. Trial court denies certification as to certain classes.

Four months later, in a ruling purportedly on Valencia's motion for class certification, the trial court ruled that additional claims are preempted by the FADA. Specifically, the trial court held that some of the wage claims (1–2, 5–6, and 9)[2] are "offshoot[s] of" or "based entirely on" the rest and meal break claims (3, 4, and 8) and therefore also preempted.

As to class certification, Valencia proposed three definitions (one class and two subclasses). Because the trial court believed the proposed class was based on the rest and meal break claims (3, 4, and 8), which it had earlier deemed preempted by the FADA, the trial court denied certification. Similarly, because the trial court deemed some of the wage claims preempted by the FADA (as discussed in the previous paragraph), the trial court denied certification to the first proposed subclass for lack of commonality and superiority. As to the second proposed subclass, the trial court granted certification with respect to only claim 7.[3]

---

[2] Though the trial court's opinion only expressly discusses claims 1 and 5–6, it appears to incorporate all of Valencia's remaining claims, including 2 and 9, other than claim 7.

[3] Valencia and SCIS later entered into a settlement such that she no longer seeks to certify the second subclass.

**DISCUSSION**

We review de novo the trial court's grant of summary judgment on purely legal issues such as federal preemption. (*Physicians Committee for Responsible Medicine v. McDonald's Corp.* (2010) 187 Cal.App.4th 554, 568.) On matters such as class certification, however, we defer to the trial court. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1022.) We will only reverse upon an abuse of discretion, such as when a class certification order "(1) . . . is unsupported by substantial evidence, (2) . . . rests on improper criteria, or (3) . . . rests on erroneous legal assumptions." (*Ibid.*)

## I.   **Valencia's claims are not preempted by the FADA.**

Federal preemption is the principle that a federal law can supersede or supplant any inconsistent state law or regulation. The principle stems from the supremacy clause of the United States Constitution, which establishes that federal law "shall be the supreme Law of the Land[,] . . . laws of any State to the Contrary notwithstanding." (U.S. Const., art. VI, cl. 2.) Therefore, Congress has the power to enact federal laws that trump or "preempt" conflicting state laws and may exercise that power by enacting an express preemption provision, as in this case, or courts may infer preemption. (See *People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777–778 (*Harris*).)

### A.   *FADA preemption precedent*

We do not proceed on a blank slate. Precedent from the United States and California Supreme Courts (both binding authority) and the Ninth Circuit (persuasive authority) have paved the way. Three key cases issued last year: *Northwest*, *supra*, __ U.S. __ [134 S.Ct. 1422]; *Harris*, *supra*, 59 Cal.4th 772; *Dilts v. Penske Logistics, LLC* (9th Cir. 2014) 769 F.3d 637 (*Dilts*).[4] All three lead to the same result in this case.

---

[4] While *Harris*, *supra*, 59 Cal.4th 772, and *Dilts*, *supra*, 769 F.3d 637, concerned the Federal Aviation Administration Authorization Act (FAAAA), rather than the FADA, the language in both preemption clauses are the same, and courts have held precedent in one is instructive for the other. (See *Dilts*, *supra*, 769 F.3d at p. 644; *Calop Bus. Sys. v. City of Los Angeles* (C.D.Cal. Oct. 30, 2013, CV 12-07542 MMM (RZx)) 2013 U.S.Dist. Lexis 169483, 62–63, fn. 55; *Tanen v. Southwest Airlines Co.* (2010) 187 Cal.App.4th

In *Northwest*, *supra*, __ U.S. __ [134 S.Ct. 1422], the United States Supreme Court found federal preemption when, after an airline cancelled a customer's frequent flyer account, the customer sued the airline for violating state contract law. (*Id.* at p. __ [134 S.Ct. at p. 1426].) The court held that the airline's frequent flyer program relates to the airline's "rates," because it allows the customer to obtain a discounted or free ticket, and relates to the airline's "services," because it allows the customer to obtain access to flights and higher service categories. (*Id.* at p. __ [134 S.Ct. at p. 1431].)

In *Harris*, *supra*, 59 Cal.4th 772, the California Supreme Court found no federal preemption when, after a trucking company classified its drivers as independent contractors rather than employees, the state sued the trucking company for violating state unfair competition law and state labor and insurance laws. (*Id.* at p. 775.) The court held that the state laws apply to all industries and therefore any effect on the trucking company's "price, route, or service" is too remote. (*Id.* at p. 785.) Further, the court rejected the trucking company's argument that complying with state law would drive up their cost of business and thus force it to raise prices and affect services, because again any such effect is too remote. (*Id.* at pp. 785–786.) Finally, the court noted that Congress did not intend for trucking companies to evade state labor and wage standards when it enacted the FADA. (*Id.* at pp. 786–787.)

In *Dilts*, *supra*, 769 F.3d 637, the Ninth Circuit found no federal preemption when, after a trucking company did not provide meal and rest breaks to its drivers, several employee drivers sued the trucking company for violating state labor and employment laws. (*Id.* at p. 640.) The court held that the state laws apply to all industries and therefore any effect on the trucking company's "price, route, or service" is too remote. (*Id.* at pp. 647, 649.) Further, the court rejected the trucking company's argument that complying with state law would drive up their cost of business and thus force it to raise prices and affect routes or services, because again any such effect is too remote. (*Id.* at

1156, 1166; *Rowe v. New Hampshire Motor Transp. Assn.* (2008) 552 U.S. 364, 370 [128 S.Ct. 989, 994, 169 L.Ed.2d 933, 939].)

p. 648.) Finally, the court noted that Congress did not intend for trucking companies to evade state meal and rest break laws when it enacted the FADA. (*Id.* at pp. 647, 649.)

In sum, these cases provide a spectrum with *Northwest*, *supra*, __ U.S. __ [134 S.Ct. 1422], on one end (preemption) and *Harris*, *supra*, 59 Cal.4th 772, and *Dilts*, *supra*, 769 F.3d 637, on the other (no preemption). "Laws are more likely to be preempted when they operate at the point where carriers provide services to customers at specific prices," such as the frequent flyer program in *Northwest*. (*Dilts*, at p. 646.) On the other end of the spectrum, "generally applicable background regulations that are several steps removed from prices, routes, or services" are not, such as the labor laws in *Harris* and *Dilts*. (*Dilts*, at p. 646.) This is true even if compliance with state laws will "raise the overall cost of doing business or require a carrier to re-direct or reroute some equipment." (*Ibid.*) Despite the potential cost increase, the carrier is still the decision-maker as to the price, route, and service, that it offers its customers. (*Id.* at p. 647.)

### B.      *Meal and rest break claims (3 and 4) are not preempted*

Requiring SCIS to comply with California meal and rest break laws does not "relate to" any airline's "price, route, or service," and therefore Valencia's meal and rest break claims are not preempted by the FADA. First, the state laws at issue here are the same state laws not preempted in *Harris*, *supra*, 59 Cal.4th 772, (labor laws) and *Dilts*, *supra*, 769 F.3d 637 (specifically labor laws on meal and rest breaks). As in those cases, the state laws here are generally applicable background regulations that are several steps removed from prices, routes, or services. They apply to all industries, not just airlines. They concern—unlike the *Northwest* point of sale between a carrier and its customer—a carrier's *service provider* and the service provider's *employees*. Whether SCIS provides meal and rest breaks to its employees is independent of the price, route, or service that airlines provide to its customers.

Second, SCIS concedes it could comply with state laws but complains that it then would have to hire additional employees and thus incur increasing costs.[5] Courts have repeatedly rejected such an argument because the purported effect on any airline fare is too remote to satisfy the FADA preemption provision. Indeed, the effects here are even more remote than in *Harris*, *supra*, 59 Cal.4th 772, and *Dilts*, *supra*, 769 F.3d 637, as SCIS is not even a "carrier" (airline) but instead a contractor who provides service to one. The potential consequences alleged here—SCIS might incur increased costs by complying with state laws, then SCIS might increase its prices to airlines, then airlines might increase its prices to passengers—are not supported by any evidence in the record. Whatever impact there may be on any airline's fares to its passengers is pure speculation. How much would it cost for SCIS to comply with these state laws? Would SCIS pass those costs on to its customer airlines? If so, in what way and by how much? Would SCIS instead absorb those costs? Would airlines pass those costs on to their passengers? If so, in what way and by how much? Would airlines instead absorb those costs? Would airlines simply choose a different subcontractor than SCIS? It boils down to this: complying with state labor and employment laws is a cost of doing business in this state. SCIS must incur those costs as other businesses in California do.

Finally, as in *Harris*, *supra*, 59 Cal.4th 772, and *Dilts*, *supra*, 769 F.3d 637, the result here is consistent with Congress's intent in enacting the FADA. There is no evidence (and SCIS points to none) that Congress enacted the FADA to allow companies to avoid state meal and break laws. Instead, Congress intended the FADA preemption

---

[5] Despite its concession, SCIS appears to argue at times that it cannot comply with state laws. It argues pilots cannot pull their planes to the side of the road like the truck drivers in *Harris*, *supra*, 59 Cal.4th 772, and *Dilts*, *supra*, 769 F.3d 637, for meal and rest breaks. But SCIS's analogy is not accurate, as its employees like Valencia work on the ground, not in-flight, and thus take meal and rest breaks at an airport, not on the plane. And while SCIS argues that *Dilts* can be distinguished because it involved *intrastate* truck driving, again the employees here remain at the same airport and thus within the same state, just like *Dilts*. Moreover, Congress intended the federal law here specifically to preempt intrastate activity. (See *Morales v. Trans World Airlines, Inc.* (1992) 504 U.S. 374, 378 [112 S.Ct. 2031, 2034, 119 L.Ed.2d 157, 163].)

provision to ward off state laws interfering with the prices that airlines provide to its passengers and the corresponding flight routes and services. (*Northwest*, *supra*, __ U.S. __ [134 S.Ct. at p. 1428].) Despite SCIS's urging to the contrary, nothing in the FADA preemption clause provides for "security" or "safety" as a basis for preemption. The plain language of the statute recites only "price, route, or service," and we must adhere to such a clear mandate from Congress.

In sum, the trial court erred in holding Valencia's claims 3 and 4 (alleging SCIS violated state meal and rest break laws) preempted by the FADA, so this court reverses.

### C.     *Unfair competition claim (8) is not preempted*

The trial court erred in holding Valencia's claim 8 (alleging SCIS violated California unfair competition law) is preempted by the FADA; therefore, this court reverses. The trial court made its one-sentence summary conclusion by relying on *Fitz-Gerald v. SkyWest Airlines, Inc.* (2007) 155 Cal.App.4th 411. The California Supreme Court, however, recently rejected the holding in *Fitz-Gerald* that the trial court here relied on. Specifically, in *Harris*, *supra*, 59 Cal.4th 772, the California Supreme Court held that "when a cause of action is based on allegations of unlawful violations of the state's labor and employment laws, there is no reason to find preemption simply because the pleading raises these issues under the UCL [unfair competition laws], as opposed to separate causes of action." (*Id.* at p. 782.) Here, Valencia's unfair competition cause of action (8) is based on her labor and employment causes of action, specifically meal and rest break labor laws (3 and 4). As we explained above, those latter claims are not preempted; therefore, neither is the former.

### D.     *Wage claims (1-2, 5-6, and 9) are not preempted*

The trial court erred in holding Valencia's wage law claims (1–2, 5–6, and 9)[6] are preempted solely because they are offshoots of or based entirely on the rest and meal break claims (3, 4, and 8) that it had deemed preempted. As we explained above,

---

[6] See footnote 2 above.

Valencia's rest and meal break claims are not preempted by the FADA; thus, the trial court's reasoning cannot stand.

## II.     Valencia's motion for class certification is remanded to the trial court.

The trial court denied certification for the remaining proposed class and subclass definitions based on its legal holding that the FADA preempted several of Valencia's claims.  Because that legal holding is incorrect, as we explained above, the trial court's class certification order cannot stand.  "A grant or denial of class certification that rests in part on an erroneous legal assumption is error; without regard to whether such a certification might on other grounds be proper, it cannot stand."  (*Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th at p. 1050.)  In light of our substantive ruling on the preemption issue, we remand the question of certification to the trial court for reconsideration in the first instance.

### DISPOSITION

The judgment is reversed.  Costs are awarded to Amanda Valencia.
CERTIFIED FOR PUBLICATION.


                                        JOHNSON, J.


We concur:


        ROTHSCHILD, P. J.


        LUI, J.


11