**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICKEY LEE DILTS; RAY RIOS; and DONNY DUSHAJ, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs-Appellants*,<br><br>v.<br><br>PENSKE LOGISTICS, LLC; and PENSKE TRUCK LEASING CO., L.P., a Delaware corporation,<br><br>*Defendants-Appellees*,<br><br>and<br><br>DOES 1–125, inclusive,<br><br>*Defendants*. | No. 12-55705<br><br>D.C. No.<br>3:08-cv-00318-CAB-BLM<br><br><br>ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Southern District of California
Cathy Ann Bencivengo, District Judge, Presiding

Argued and Submitted
March 3, 2014—Pasadena, California

Filed July 9, 2014
Amended September 8, 2014

Before: Alex Kozinski, Chief Judge, Susan P. Graber, Circuit Judge, and Jack Zouhary,[*] District Judge.

Opinion by Judge Graber;
Concurrence by Judge Zouhary

---

## SUMMARY[**]

---

### Federal Preemption

The panel filed an order amending its previous opinion and concurrence, and in the amended opinion the panel reversed the district court's dismissal, based on federal preemption, of claims brought by a certified class of drivers alleging violations of California's meal and rest break laws.

The panel held that California's meal and rest break laws as applied to the motor carrier defendants were not "related to" defendants' prices, routes, or services, and therefore they were not preempted by the Federal Aviation Administration Authorization Act of 1994.

District Judge Zouhary concurred, and wrote separately to emphasize that the defendant failed to carry its burden of proof on its preemption defense.

---

[*] The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Deepak Gupta (argued), Brian Wolfman, Gregory A. Beck, and Jonathan E. Taylor, Gupta Beck PLLC, Washington, D.C.; Michael D. Singer and J. Jason Hill, Cohelan Khoury & Singer, San Diego, California, for Plaintiffs-Appellants.

James H. Hanson (argued), Scopelitis, Garvin, Light, Hanson & Feary, P.C., Indianapolis, Indiana; and Adam C. Smedstad, Scopelitis, Garvin, Light, Hanson & Feary, P.C., Chicago, Illinois, for Defendants-Appellees.

Jeffrey Clair (argued) and Stuart F. Delery, Assistant Attorneys General, Civil Division, United States Department of Justice; Kathryn B. Thomson, Acting General Counsel, Paul M. Geier, Assistant General Counsel for Litigation, and Peter J. Plocki, Deputy Assistant General Counsel for Litigation, United States Department of Transportation; and T.F. Scott Darling, III, Chief Counsel, and Debra S. Straus, Senior Attorney, Federal Motor Carrier Safety Administration, Washington, D.C., for Amicus Curiae United States of America.

Richard Pianka, ATA Litigation Center, and Prasad Sharma, American Trucking Associations, Inc., Arlington, Virginia; Paul DeCamp, Jackson Lewis LLP, Reston, Virginia; Douglas J. Hoffman, Jackson Lewis LLP, Boston, Massachusetts; and Robin S. Conrad and Shane B. Kawka, National Chamber Litigation Center, Inc., Washington, D.C.; Guillermo Marrero, International Practice Group, P.C., San Diego, California; and Andrew J. Kahn and Richard G. McCracken, Davis, Cowell & Bowe, LLP, San Francisco, California, for Amici Curiae.

## ORDER

The opinion filed on July 9, 2014, and published at 2014 WL 3291749, are amended by the opinion and concurrence filed concurrently with this order.

With these amendments, Chief Judge Kozinski and Judge Graber have voted to deny the petition for rehearing en banc, and Judge Zouhary has so recommended.

The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote on it.

The petition for rehearing en banc is **DENIED**. No further petitions for rehearing may be filed.

## OPINION

GRABER, Circuit Judge:

Plaintiffs, a certified class of drivers employed by Defendants Penske Logistics, LLC, and Penske Truck Leasing Co., L.P., appeal from a judgment dismissing their claims under California's meal and rest break laws. The district court held on summary judgment that the Federal Aviation Administration Authorization Act of 1994 ("FAAAA") preempts those state laws as applied to motor carriers. Reviewing de novo the interpretation and construction of the FAAAA and the question of federal preemption, *Tillison v. Gregoire*, 424 F.3d 1093, 1098 (9th Cir. 2005), we hold that the state laws at issue are not "related

to" prices, routes, or services, and therefore are not preempted by the FAAAA. Accordingly, we reverse.

FACTUAL AND PROCEDURAL HISTORY

Plaintiffs Mickey Lee Dilts, Ray Rios, and Donny Dushaj brought this class action against Defendants, which are motor carriers, alleging that Defendants routinely violate California's meal and rest break laws, Cal. Lab. Code §§ 226.7, 512; Cal. Code Regs. tit. 8, § 11090. Plaintiffs represent a certified class of 349 delivery drivers and installers, all of whom are assigned to the Penske Whirlpool account. Plaintiffs work exclusively on routes within the state of California, typically work more than 10 hours a day, and frequently work in pairs, with one driver and one deliverer/installer in each truck.

California law generally requires a 30-minute meal break for every five hours worked, Cal. Lab. Code § 512, and a paid 10-minute rest break for every four hours worked, Cal. Code Regs. tit. 8, § 11090. Plaintiffs allege that Defendants automatically program 30-minute meal breaks into employees' shifts while failing to ensure that employees actually take those breaks and that Defendants create a working environment that discourages employees from taking their meal and rest breaks.

Plaintiffs initially filed this action in state court. Defendants removed the case to federal district court under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d)(2), 1441(b), 1453. Following removal, Defendants moved for summary judgment, claiming a preemption defense. Defendants argued that the state meal and rest break laws as applied to motor carriers are preempted under the FAAAA,

which provides that "States may not enact or enforce a law . . . related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).  Concluding that California's meal and rest break laws impose "fairly rigid" timing requirements, dictating "exactly when" and "for exactly how long" drivers must take breaks, and restricting the routes that a motor carrier may select, the district court held that California's meal and rest break laws meet the FAAAA preemption standard and granted summary judgment for Defendants. *Dilts v. Penske Logistics LLC*, 819 F. Supp. 2d 1109, 1119–20 (S.D. Cal. 2011).[1]  Plaintiffs timely appeal.

---

[1] Since *Dilts* was decided, eight other California district court decisions have held that the FAAAA preempts California's meal and rest break laws, while four have held that it does not.  The other cases that followed *Dilts* are:  *Rodriguez v. Old Dominion Freight Line, Inc.*, No. CV13-891DSF(RZx), 2013 WL 6184432, at *4 (C.D. Cal. Nov. 27, 2013); *Parker v. Dean Transp. Inc.*, No. CV13-02621BRO(VBKx), 2013 WL 7083269, at *9 (C.D. Cal. Oct. 15, 2013); *Ortega v. J.B. Hunt Transp., Inc.*, No. CV07-08336(BRO)(FMOx), 2013 WL 5933889, at *7 (C.D. Cal. Oct. 2, 2013); *Burnham v. Ruan Transp.*, No. SACV12-0688AG(ANx), 2013 WL 4564496, at *5 (C.D. Cal. Aug. 16, 2013); *Cole v. CRST, Inc.*, No. EDCV08-1570-VAP(OPx), 2012 WL 4479237, at *4–6 (C.D. Cal. Sept. 27, 2012); *Campbell v. Vitran Express, Inc.*, No. CV11-05029-RGK(SHx), 2012 WL 2317233, at *4 (C.D. Cal. June 8, 2012); *Aguiar v. Cal. Sierra Express, Inc.*, No. 2:11-cv-02827-JAM-GGH, 2012 WL 1593202, at *1 (E.D. Cal. May 4, 2012); *Esquivel v. Vistar Corp.*, No. 2:11-cv-07284-JHN-PJWx, 2012 WL 516094, at *4–6 (C.D. Cal. Feb. 8, 2012) (unpublished decisions); *see also Miller v. Sw. Airlines Co.*, 923 F. Supp. 2d 1206, 1212–13 (N.D. Cal. 2013) (holding California's break laws preempted under the analogous provision of the Airline Deregulation Act); *Helde v. Knight Transp., Inc.*, 982 F. Supp. 2d 1189, 1195–96 (W.D. Wash. 2013) (applying similar analysis to Washington's rest break provisions and holding them preempted under the FAAAA).  The cases holding that California's meal and rest break laws are not preempted by the FAAAA are:  *Villalpando v. Exel Direct Inc.*, No. 12-cv-04137JCS, 2014 WL 1338297, at *12 (N.D. Cal. Mar. 28, 2014); *Brown v. Wal-Mart*

## DISCUSSION

### A.  California's Meal and Rest Break Laws

California Labor Code sections 226.7 and 512, and the related regulations for the transportation industry promulgated by California's Industrial Welfare Commission as California Code of Regulations title 8, section 11090, together constitute the state's meal and rest break laws.

Employers must provide a meal break of 30 minutes for an employee who works more than five hours a day, plus a second meal break of 30 minutes for an employee who works more than 10 hours a day.  Cal. Lab. Code § 512(a).  For employees who work no more than six hours, the meal break may be waived by mutual consent of the employer and employee; for employees who work no more than 12 hours, one of the two meal breaks may be waived by mutual consent.  *Id.*  If the nature of the work prevents an employee from taking an off-duty meal break, the employer and employee may agree to an on-duty meal break by mutual consent.  *Id.*  For transportation workers whose daily work time is at least three and one-half hours, employers must provide a paid rest period of 10 minutes for every four hours "or major fraction thereof."  Cal. Code Regs. tit. 8,

*Stores, Inc.*, No. C08-5221SI, 2013 WL 1701581, at \*3–4 (N.D. Cal. Apr. 18, 2013); *Mendez v. R+L Carriers, Inc.*, No. C11-2478CW, 2012 WL 5868973, at \*4–7 (N.D. Cal. Nov. 19, 2012) (unpublished decisions); *Reinhardt v. Gemini Motor Transp.*, 869 F. Supp. 2d 1158, 1165–67 (E.D. Cal. 2012).

This is the first time that the question is before us.  It is also before us in *Campbell v. Vitran Express, Inc.*, No. 12-56250, which we decided concurrently in a memorandum disposition.

§ 11090(12)(A). The regulations governing transportation workers are consistent with those governing workers in other industries. *See id.* §§ 11010–11170.

An employer may not require an employee to work during any meal or rest period. Cal. Lab. Code § 226.7(b). An employer must pay an employee for an additional hour of work at the employee's regular rate for each workday for which a meal or rest period is not provided. Cal. Lab. Code § 226.7(c). "[S]ection 226.7 does not give employers a lawful choice between providing *either* meal and rest breaks *or* an additional hour of pay. . . . The failure to provide required meal and rest breaks is what triggers a violation of section 226.7." *Kirby v. Immoos Fire Prot., Inc.*, 274 P.3d 1160, 1168 (Cal. 2012). "The 'additional hour of pay' . . . is the legal remedy . . . ." *Id.*

The California Supreme Court, in an opinion published after the order on summary judgment issued in this case, clarified that state laws allow some flexibility with respect to the timing and circumstances of meal breaks. *Brinker Rest. Corp. v. Superior Court*, 273 P.3d 513 (Cal. 2012). In the absence of a waiver, California law "requires a first meal period no later than the end of an employee's fifth hour of work, and a second meal period no later than the end of an employee's 10th hour of work," but "does not impose additional timing requirements." *Id.* at 537. "[A]n employer must relieve the employee of all duty for the designated [meal] period, but need not ensure that the employee does no work." *Id.* at 532. When the nature of the work makes off-duty meal breaks infeasible, the employer and employee may, by mutual written agreement, waive the off-duty meal break requirement. *Id.* at 533 (citing California's Industrial Welfare Commission Wage Order No. 5). Finally, "as a general

matter, one rest break should fall on either side of the meal break. [But s]horter or longer shifts and other factors that render such scheduling impracticable may alter this general rule," and employers have flexibility in scheduling breaks according to the nature of the work. *Id.* at 531 (citation, brackets, and internal quotation marks omitted).

## B. The "Related to" Test for FAAAA Preemption

In considering the preemptive scope of a statute, congressional intent "is the ultimate touchstone." *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1040 (9th Cir. 2007) (internal quotation marks omitted). "Congress' intent . . . primarily is discerned from the language of the pre-emption statute and the statutory framework surrounding it. Also relevant, however, is the structure and purpose of the statute as a whole, as revealed . . . through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996) (citations and internal quotation marks omitted).

"Preemption analysis begins with the presumption that Congress does not intend to supplant state law. Although Congress clearly intended FAAAA to preempt some state regulations of motor carriers who transport property, the scope of the pre-emption must be tempered by the presumption against the pre-emption of state police power regulations." *Tillison*, 424 F.3d at 1098 (citation and internal quotation marks omitted); *Medtronic, Inc.*, 518 U.S. at 485; *see also Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (noting that the presumption against preemption applies "in all preemption cases" and is especially strong in areas of

traditional state regulation (internal quotation marks and brackets omitted). Wage and hour laws constitute areas of traditional state regulation, although that fact alone does not "immunize" state employment laws from preemption if Congress in fact contemplated their preemption. *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 330–34 (1997).

"Where, as in this case, Congress has superseded state legislation by statute, our task is to identify the domain expressly pre-empted. To do so, we focus first on the statutory language, which necessarily contains the best evidence of Congress' pre-emptive intent." *Dan's City Used Cars, Inc. v. Pelkey*, 133 S. Ct. 1769, 1778 (2013) (citation and internal quotation marks omitted) (interpreting the FAAAA). The FAAAA's preemption clause provides, in relevant part: "States may not enact or enforce a law . . . related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The statutory "related to" text is "deliberately expansive" and "conspicuous for its breadth." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383–84 (1992) (internal quotation marks omitted). That said, the FAAAA does not go so far as to preempt state laws that affect prices, routes, or services in "only a tenuous, remote, or peripheral manner, such as state laws forbidding gambling." *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 371 (2008) (internal quotation marks and alteration omitted). As the Supreme Court recently observed, "the breadth of the words 'related to' does not mean the sky is the limit." *Dan's City Used Cars*, 133 S. Ct. at 1778.

Because "everything is related to everything else," *Dillingham Constr.*, 519 U.S. at 335 (Scalia, J., concurring),

understanding the nuances of congressional intent is particularly important in FAAAA preemption analysis. We must draw a line between laws that are significantly "related to" rates, routes, or services, even indirectly, and thus are preempted, and those that have "only a tenuous, remote, or peripheral" connection to rates, routes, or services, and thus are not preempted. *Rowe*, 552 U.S. at 371. To better discern congressional intent, we turn next to the legislative history and broader statutory framework of the FAAAA. *Lohr*, 518 U.S. at 486.

Enacted in 1994, the FAAAA was modeled on the Airline Deregulation Act of 1978. In 2008, the Supreme Court summarized the history behind the FAAAA:

> In 1978, Congress "determin[ed] that 'maximum reliance on competitive market forces'" would favor lower airline fares and better airline service, and it enacted the Airline Deregulation Act. *Morales*[, 504 U.S. at 378] (quoting 49 U.S.C. App. § 1302(a)(4) (1988 ed.)); see 92 Stat. 1705. In order to "ensure that the States would not undo federal deregulation with regulation of their own," th[e Airline Deregulation] Act "included a pre-emption provision" that said "no State . . . shall enact or enforce any law . . . relating to rates, routes, or services of any air carrier." *Morales*, *supra*, at 378; 49 U.S.C. App. § 1305(a)(1) (1988 ed.).

> In 1980, Congress deregulated trucking. See Motor Carrier Act of 1980, 94 Stat. 793. And a little over a decade later, in 1994,

> Congress similarly sought to pre-empt state trucking regulation. See Federal Aviation Administration Authorization Act of 1994, 108 Stat. 1605–1606; see also ICC Termination Act of 1995, 109 Stat. 899. In doing so, it borrowed language from the Airline Deregulation Act of 1978 and wrote into its 1994 law language that says: "[A] State . . . may not enact or enforce a law . . . related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1); see also § 41713(b)(4)(A) (similar provision for combined motor-air carriers).

*Rowe*, 552 U.S. at 367–68.

By using text nearly identical to the Airline Deregulation Act's, Congress meant to create parity between freight services provided by air carriers and those provided by motor carriers. *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1187 (9th Cir. 1998). Therefore, the analysis from *Morales* and other Airline Deregulation Act cases is instructive for our FAAAA analysis as well. The one difference between the Airline Deregulation Act and the FAAAA is that the latter contains the additional phrase "with respect to the transportation of property," which is absent from the Airline Deregulation Act and which "massively limits the scope of preemption ordered by the FAAAA." *Dan's City Used Cars*, 133 S. Ct. at 1778 (internal quotation marks omitted). Here, the parties do not dispute that the transportation of property is involved, so our analysis

turns on the "related to price, route, or service" element of the FAAAA preemption test.

The principal purpose of the FAAAA was "to prevent States from undermining federal deregulation of interstate trucking" through a "patchwork" of state regulations. *Am. Trucking Ass'ns v. City of Los Angeles*, 660 F.3d 384, 395–96 (9th Cir. 2011). The sorts of laws that Congress considered when enacting the FAAAA included barriers to entry, tariffs, price regulations, and laws governing the types of commodities that a carrier could transport. H.R. Conf. Rep. No. 103-677, at 86 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1715, 1758. The FAAAA expressly does *not* regulate a state's authority to: enact safety regulations with respect to motor vehicles; control trucking routes based on vehicle size, weight, and cargo; impose certain insurance, liability, or standard transportation rules; regulate the intrastate transport of household goods and certain aspects of tow-truck operations; or create certain uniform cargo or antitrust immunity rules. 49 U.S.C. § 14501(c)(2), (3). This list was "not intended to be all inclusive, but merely to specify some of the matters which are not 'prices, rates or services' and which are therefore not preempted." H.R. Conf. Rep. No. 103-677, at 84, *reprinted in* 1994 U.S.C.C.A.N. at 1756. Accordingly, Congress did not intend to preempt generally applicable state transportation, safety, welfare, or business rules that do not otherwise regulate prices, routes, or services. Consistent with that instruction, we have held that the FAAAA does not preempt a state's prevailing wage law, *Mendonca*, 152 F.3d at 1189, or a state law requiring that towing services obtain express authorization to tow from private property, *Tillison*, 424 F.3d at 1099–1100, and that the Airline Deregulation Act does not preempt a generally applicable city anti-discrimination law, *Air Transp. Ass'n of*

*Am. v. City of San Francisco*, 266 F.3d 1064, 1071 (9th Cir. 2001).

In 2008, after reviewing the relevant statutory text, legislative history, and jurisprudence, the Supreme Court identified four principles of FAAAA preemption: (1) "'state enforcement actions having a connection with, or reference to,' carrier 'rates, routes or services' are pre-empted"; (2) "such pre-emption may occur even if a state law's effect on rates, routes or services 'is only indirect'"; (3) "it makes no difference whether a state law is 'consistent' or 'inconsistent' with federal regulation"; and (4) "pre-emption occurs at least where state laws have a 'significant impact' related to Congress' deregulatory and pre-emption-related objectives." *Rowe*, 552 U.S. at 370–71 (brackets and emphasis omitted) (quoting the Airline Deregulation Act analysis in *Morales*, 504 U.S. at 384, 386–87, 390).

Contrary to Defendants' argument, *Rowe* did not represent a significant shift in FAAAA jurisprudence. Nor did it call into question our past FAAAA cases, such as *Mendonca*, 152 F.3d at 1187–89. *See also Miller v. Gammie*, 335 F.3d 889, 892–93 (9th Cir. 2003) (en banc) (holding that a three-judge panel may ignore binding circuit precedent only if it is "clearly irreconcilable with the reasoning or theory of intervening higher authority"). *Rowe* instructs us to apply to our FAAAA cases the settled preemption principles developed in Airline Deregulation Act cases, including the rule articulated in *Morales* that a state law may "relate to" prices, routes, or services for preemption purposes even if its effect is only indirect, 504 U.S. at 385–86, but that a state law connected to prices, routes, or services in "too tenuous, remote, or peripheral a manner" is not preempted, *id.* at 390 (internal quotation marks omitted). *See also* H.R. Conf. Rep.

No. 103-677, at 83, *reprinted in* 1994 U.S.C.C.A.N. at 1755 (noting that the drafters of the FAAAA did "not intend to alter the broad preemption interpretation adopted by the United States Supreme Court in *Morales*"). We applied precisely that rule in *Mendonca*, 152 F.3d at 1187–89. *Rowe* simply reminds us that, whether the effect is direct or indirect, "the state laws whose effect is forbidden under federal law are those with a *significant* impact on carrier rates, routes, or services." 552 U.S. at 375 (internal quotation marks omitted).

*Rowe* concerned a Maine law requiring tobacco retailers to use a delivery service that provided recipient verification. The Supreme Court held that the verification requirement interfered with the de-regulatory goals behind the FAAAA's preemption clause because it would "require carriers to offer a system of services that the market does not provide[,] . . . would freeze into place services that carriers might prefer to discontinue in the future," and would directly substitute Maine's "own governmental commands for competitive market forces in determining (to a significant degree) the services that motor carriers will provide." 552 U.S. at 372 (internal quotation marks omitted). The Maine statute also required that carriers provide a special checking system to receive any shipment originating from a known tobacco retailer. *Id.* at 373. The Supreme Court held that requiring the carriers to check packages in this way would "regulate a significant aspect of the motor carrier's package pickup and delivery service" and, again, could freeze into place services that the market would not otherwise provide. *Id.*

In short, the Maine statute required carriers to provide or use certain special services in order to comply with the law. The statute was, as we have described other preempted laws,

one in which "the existence of a price, route or service [was] essential to the law's operation." *Air Transp. Ass'n*, 266 F.3d at 1071 (internal quotation marks and brackets omitted). In an Airline Deregulation Act case following *Rowe*, we held that, in "'borderline' cases" in which a law does not refer directly to rates, routes, or services, "the proper inquiry is whether the provision, directly or indirectly, *binds* the carrier to a particular price, route or service and thereby interferes with the competitive market forces within the industry." *Am. Trucking*, 660 F.3d at 397 (emphasis added) (internal quotation marks and alterations omitted). Thus, laws mandating motor carriers' use (or non-use) of particular prices, routes, or services in order to comply with the law are preempted.

Laws are more likely to be preempted when they operate at the point where carriers provide services to customers at specific prices. In *Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422, 1431 (2014), the Supreme Court held that an airline customer's claim against the airline for breach of an implied covenant, stemming from the termination of his frequent flyer account, was "related to" prices, routes, and especially services. The Court held that, because frequent flyer credits could be redeemed for services offered for free or at reduced prices, the state law contract claim met the "related to" test, *id.*, and, because the state law claim sought to enlarge the contractual relationship that the carrier and its customer had voluntarily undertaken, was preempted under the Airline Deregulation Act, *id.* at 1433; *see also S.C. Johnson & Son v. Transp. Corp. of Am.*, 697 F.3d 544, 558 (7th Cir. 2012) (noting that *Morales* and *Mendonca* both stand for the proposition that the Airline Deregulation Act and FAAAA do not preempt "laws that regulate . . . inputs [that] operate one or more steps away from the moment at which the firm offers

its customer a service for a particular price"); *DiFiore v. Am. Airlines, Inc.*, 646 F.3d 81, 88 (1st Cir. 2011) (the preempted law "directly regulates how an airline service is performed and how its price is displayed to customers—not merely how the airline behaves as an employer or proprietor").

On the other hand, generally applicable background regulations that are several steps removed from prices, routes, or services, such as prevailing wage laws or safety regulations, are not preempted, even if employers must factor those provisions into their decisions about the prices that they set, the routes that they use, or the services that they provide. Such laws are not preempted even if they raise the overall cost of doing business or require a carrier to re-direct or re-route some equipment. *Mendonca*, 152 F.3d at 1189. Indeed, many of the laws that Congress enumerated as expressly *not* related to prices, routes, or services—such as transportation safety regulations or insurance and liability rules, 49 U.S.C. § 14501(c)(2)—are likely to increase a motor carrier's operating costs. But Congress clarified that this fact alone does not make such laws "related to" prices, routes, or services. Nearly every form of state regulation carries some cost. The statutory text tells us, though, that in deregulating motor carriers and promoting maximum reliance on market forces, Congress did not intend to exempt motor carriers from every state regulatory scheme of general applicability. 49 U.S.C. § 14501(c); *see also, e.g.*, *Rowe*, 552 U.S. at 375 (holding that a state law is not preempted when it "prohibits certain forms of conduct and affects, say, truckdrivers, only in their capacity as members of the public").

Nor does a state law meet the "related to" test for FAAAA preemption just because it shifts incentives and makes it more costly for motor carriers to choose some routes

or services *relative* to others, leading the carriers to reallocate resources or make different business decisions. For example, a San Francisco city ordinance requiring equal protection for domestic partners did not "compel or bind the Airlines to a particular route or service," even though it might increase the cost of doing business at the San Francisco airport relative to other markets. *Air Transp. Ass'n*, 266 F.3d at 1074. Despite the potential cost increase associated with using the San Francisco airport as a result of the city ordinance, carriers could still "make their own decisions about where to fly and how many resources to devote to each route and service." *Id.*

In short, even if state laws increase or change a motor carrier's operating costs, "broad law[s] applying to hundreds of different industries" with no other "forbidden connection with prices[, routes,] and services"—that is, those that do not directly or indirectly mandate, prohibit, or otherwise regulate certain prices, routes, or services— are not preempted by the FAAAA. *Id.* at 1072.

## C. California's Meal and Rest Break Laws are Not Preempted

Although we have in the past confronted close cases that have required us to struggle with the "related to" test, and refine our principles of FAAAA preemption, we do not think that this is one of them. In light of the FAAAA preemption principles outlined above, California's meal and rest break laws plainly are not the sorts of laws "related to" prices, routes, or services that Congress intended to preempt. They do not set prices, mandate or prohibit certain routes, or tell motor carriers what services they may or may not provide, either directly or indirectly. They are "broad law[s] applying to hundreds of different industries" with no other "forbidden

connection with prices[, routes,] and services." *Air Transp. Ass'n*, 266 F.3d at 1072. They are normal background rules for almost *all* employers doing business in the state of California. And while motor carriers may have to take into account the meal and rest break requirements when allocating resources and scheduling routes—just as they must take into account state wage laws, *Mendonca*, 152 F.3d at 1189, or speed limits and weight restrictions, 49 U.S.C. § 14501(c)(2)—the laws do not "bind" motor carriers to specific prices, routes, or services, *Am. Trucking*, 660 F.3d at 397. Nor do they "freeze into place" prices, routes, or services or "determin[e] (to a significant degree) the [prices, routes, or] services that motor carriers will provide," *Rowe*, 552 U.S. at 372.

Further, applying California's meal and rest break laws to motor carriers would not contribute to an impermissible "patchwork" of state-specific laws, defeating Congress' deregulatory objectives. The fact that laws may differ from state to state is not, on its own, cause for FAAAA preemption. In the preemption provision, Congress was concerned only with those state laws that are significantly "related to" prices, routes, or services. A state law governing hours is, for the foregoing reasons, not "related to" prices, routes, or services and therefore does not contribute to "a patchwork of state *service-determining* laws, rules, and regulations." *Rowe*, 552 U.S. at 373 (emphasis added). It is instead more analogous to a state wage law, which may differ from the wage law adopted in neighboring states but nevertheless is permissible. *Mendonca*, 152 F.3d at 1189.[2]

_____

[2] We recently noted that it was an "open issue" "whether a federal law can ever preempt state law on an 'as applied' basis, that is, whether it is proper to find that federal law preempts a state regulatory scheme

Defendants argue that California's meal and rest break laws are "related to" routes or services, "if not prices too," in six specific ways. None of those examples convinces us that California's laws are "related to" prices, routes, or services in the way that Congress intended.

First, Defendants argue that the state break laws impermissibly mandate that *no* motor carrier service be provided during certain times because the laws require a cessation of work during the break period. But the state law requires only that *each individual employee* take an off-duty break at some point within specified windows—not that a motor carrier suspend its service. Defendants are at liberty to schedule service whenever they choose. They simply must hire a sufficient number of drivers and stagger their breaks for any long period in which continuous service is necessary.

---

sometimes but not at other times, or that a federal law can preempt state law when applied to certain parties, but not to others." *Cal. Tow Truck Ass'n v. City of San Francisco*, 693 F.3d 847, 865 (9th Cir. 2012). We need not resolve that issue here. For the reasons discussed in this section, we hold that California's meal and rest break laws, as generally applied to motor carriers, are not preempted.

Were we to construe Defendant's argument as an "as applied" challenge, we would reach the same conclusion and, if anything, find the argument against preemption even stronger. Plaintiff drivers work on short-haul routes and work exclusively within the state of California. They therefore are not covered by other state laws or federal hours-of-service regulations, 49 C.F.R. § 395.3, and would be without *any* hours-of-service limits if California laws did not apply to them. *See Hours of Service of Drivers*, 78 Fed. Reg. 64,179-01, 64,181 (Oct. 28, 2013) (amending 49 C.F.R. § 395.3 to exclude short-haul drivers, in compliance with *Am. Trucking Ass'ns v. Fed. Motor Carrier Safety Admin.*, 724 F.3d 243 (D.C. Cir. 2013), *cert. denied*, 134 S. Ct. 914 (2014)). Consequently, Defendants *in particular* are not confronted with a "patchwork" of hour and break laws, even a "patchwork" permissible under the FAAAA.

Second, Defendants argue that mandatory breaks mean that drivers take longer to drive the same distance, providing less service overall. But that argument equates to nothing more than a modestly increased cost of doing business, which is not cause for preemption, *Air Transp. Ass'n*, 266 F.3d at 1071; *Mendonca*, 152 F.3d at 1189. Motor carriers may have to hire additional drivers or reallocate resources in order to maintain a particular service level, but they remain free to provide as many (or as few) services as they wish. The law in question has nothing to say about *what* services an employer does or does not provide.

Third, Defendants argue that break laws require carriers to alter "the frequency and scheduling of transportation," which directly relates to services under *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1265–66 (9th Cir. 1998) (en banc). *Charas* held that, under the Airline Deregulation Act, services include "such things as the frequency and scheduling of transportation, and . . . the selection of markets to or from which transportation is provided." *Id.* Again, this argument conflates requirements for *individual drivers* with requirements imposed on motor carriers. Motor carriers may schedule transportation as frequently or as infrequently as they choose, at the times that they choose, and still comply with the law. They simply must take drivers' break times into account—just as they must take into account speed limits or weight restrictions, 49 U.S.C. § 14501(c), which are not preempted by the FAAAA.

Fourth, Defendants argue that California break laws require motor carriers to schedule services in accordance with state law, rather than in response to market forces, thereby interfering with the FAAAA's deregulatory objectives. But the mere fact that a motor carrier must take into account a

state regulation when planning services is not sufficient to require FAAAA preemption, so long as the law does not have an impermissible effect, such as binding motor carriers to specific services, *Am. Trucking*, 660 F.3d at 397, making the continued provision of particular services essential to compliance with the law, *Rowe*, 552 U.S. at 372; *Air Transp. Ass'n*, 266 F.3d at 1074, or interfering at the point that a carrier provides services to its customers, *Nw., Inc.*, 134 S. Ct. at 1431. Moreover, all motor carriers in California are subject to the same laws, so all intrastate carriers like Defendants are equally subject to the relevant market forces.

Turning to routes, Defendants' fifth argument is that the requirement that drivers pull over and stop for each break period necessarily dictates that they alter their routes. To the extent that compliance with California law requires drivers to make minor deviations from their routes, such as pulling into a truck stop, we see no indication that this is the sort of "route control" that Congress sought to preempt. "'[R]outes' generally refer[s] to . . . point-to-point transport . . . [and] courses of travel." *Charas*, 160 F.3d at 1265. The requirement that a driver briefly pull on and off the road during the course of travel does not meaningfully interfere with a motor carrier's ability to select its starting points, destinations, and routes. Indeed, Congress has made clear that even more onerous route restrictions, such as weight limits on particular roads, are not "related to" routes and therefore are not preempted. 49 U.S.C. § 14501(c).

Sixth, and relatedly, Defendants argue that finding routes that allow drivers to comply with California's meal and rest break laws will limit motor carriers to a smaller set of possible routes. But Defendants, who bear the burden of proof in establishing the affirmative defense of preemption,

*PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567, 2587 (2011), submitted no evidence to show that the break laws in fact would decrease the availability of routes to serve the Whirlpool accounts, or would meaningfully decrease the availability of routes to motor carriers in California. Instead, Defendants submitted only very general information about the difficulty of finding parking for commercial trucks in California. Although compliance with California's meal and break laws may require some minor adjustments to drivers' routes, the record fails to suggest that state meal and rest break requirements will so restrict the set of routes available as to indirectly bind Defendants, or motor carriers generally, to a limited set of routes, *Am. Trucking*, 660 F.3d at 397, or make the provision or use of specific routes necessary for compliance with the law, *Air Transp. Ass'n*, 226 F.3d at 1074. Moreover, drivers already must incorporate into their schedule fuel breaks, pick ups, drop offs and, in some cases, time to install products or wait for their partner to complete an installation.

Finally, in an amicus brief filed at our invitation, the Secretary of Transportation argued that: (1) state laws like California's, which do not directly regulate prices, routes, or services, are not preempted by the FAAAA unless they have a "significant effect" on prices, routes, or services; (2) in the absence of explicit instructions from Congress, there is a presumption against preemption in areas of traditional state police power, including employment; and (3) there is no showing of an actual or likely significant effect on prices, routes, or services, and so the California laws at issue are not preempted. *See also Meal Breaks and Rest Breaks for Commercial Motor Vehicle Drivers*, 73 Fed. Reg. 79,204-01, 79,206 (Dec. 24, 2008) (determining, in an order issued by the Department of Transportation, that the agency lacked

jurisdiction to preempt California's meal and rest break laws under another statute, 49 U.S.C. § 31141, because those state laws are not "laws [or] regulations on commercial motor safety").

Although the Department of Transportation's interpretation of the FAAAA is not controlling, we find it persuasive in light of:  (1) the agency's general expertise in the field of transportation and regulation, (2) the fact that the position taken in the brief represents the agency's reasoned consideration of the question, and (3) the fact that the government's position is generally consistent with its approach to other preemption questions concerning California's meal and rest break laws (although this is the first time that the government has taken a position on FAAAA preemption specifically).  *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (holding that a non-controlling agency opinion may carry persuasive weight, depending on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control"); *see also Van Asdale v. Int'l Game Tech.*, No. 11-16538, 2014 WL 3973388, at *3 (9th Cir. Aug. 15, 2014) (applying *Skidmore* deference to the Department of Labor's view on the appropriate statutory interpretation of a damages provision in the Sarbanes-Oxley Act of 2002, as expressed in the agency's amicus brief).

For the reasons discussed above, we agree with the Department of Transportation.  Although we would reach the same result in the absence of the agency's brief, the government's position provides additional support for our conclusion that the FAAAA does not preempt California's meal and rest break laws.

CONCLUSION

The FAAAA does not preempt California's meal and rest break laws as applied to Defendants, because those state laws are not "related to" Defendants' prices, routes, or services. The district court dismissed this action on summary judgment because of Defendants' preemption defense, so it has not yet considered the merits of Plaintiffs' claims. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

---

ZOUHARY, District Judge, concurring:

I write separately to emphasize several aspects of this case. As the Majority notes, Penske bears the burden of proof on its preemption defense. *See supra* at 22. But Penske did not offer specific evidence of (for example) the actual effects of the California law on Penske's own routes or services. Instead, Penske relied on a general hypothetical likelihood that a Penske delivery driver, with limited flexibility in traveling from point A to point B, is further restricted to certain routes that would allow a driver to park his or her truck and enter "off-duty" status.

Penske failed to carry its burden. I consequently express no opinion, for example, that the possibility a "driver [must] *briefly* pull on and off the road during the course of travel *does not meaningfully interfere* with a motor carrier's ability to select its starting points, destinations, and routes." *Id.* (emphases added). Maybe so. Maybe not.

Further, the Majority incorrectly posits that Defendants are at liberty to schedule as they choose, tempered only by hiring more drivers and staggering breaks. Customer demands and practicalities must also be considered. As in air and train transportation, substitution crews may now be needed when hours of service are reached with some expense, delay, and impact on service. With respect to costs-of-labor, Penske did produce specific evidence, reflecting an estimated 3.4 percent increase in annual pricing to service a relevant account. Without more, that minimal increase in pricing is an insufficient basis for preempting the decades-old meal and rest break requirement. *Mendonca*, 152 F.3d at 1189 (finding California's prevailing wage requirement, which increased a motor-carrier defendant's prices by 25 percent, "in a certain sense . . . 'related to' [the motor carrier-defendant's] prices, routes and services," but had an effect that was "no more than indirect, remote, and tenuous").

Finally, I note what this case is *not* about. This case is not an occasion for us to reexamine prior precedent – the discussion of *Rowe*, *Northwest Airlines, Inc.*, and *Gammie* makes that clear. Nor is this case about FAAAA preemption in the context of interstate trucking – though one gets the sense that various *amici* wish it were. On this record, and in the intrastate context, California's meal and rest break requirements are not preempted.