**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHARLES E. WARD, individually, and on behalf of all others similarly situated, | No. 16-16415 |
| *Plaintiff-Appellant*, | D.C. No. 3:15-cv-02309-WHA |
| v. | |
| UNITED AIRLINES, INC., | |
| *Defendant-Appellee.* | |

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

FELICIA VIDRIO, individually, and on behalf of all others similarly situated; PAUL BRADLEY, individually, and on behalf of all others similarly situated, *Plaintiffs-Appellants*,

v.

UNITED AIRLINES, INC.,
          *Defendant-Appellee*,

and

DOES, 1 through 50, inclusive,
          *Defendant.*

No. 17-55471

D.C. No. 2:15-cv-07985-PSG-MRW

OPINION

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, Chief District Judge, Presiding

Argued and Submitted October 30, 2020
San Francisco, California

Filed February 2, 2021

Before:  Paul J. Watford and Michelle T. Friedland, Circuit
Judges, and Jed S. Rakoff,[*] District Judge.

Opinion by Judge Watford

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

# SUMMARY[**]

## California Labor Code / Preemption

The panel reversed the district courts' summary judgment in favor of United Airlines, Inc. in two consolidated cases brought by certified classes of United pilots and flight attendants who reside in California, alleging that the wage statements they received from United failed to comply with California Labor Code § 226.

The panel certified to the California Supreme Court the question whether California Labor Code § 226 applied. In response, the California Supreme Court held that the statute applied "if the employee's principal place of work is in California." *Ward v. United Airlines, Inc.*, 466 P.3d 309, 325 (Cal. 2020). The Supreme Court then set forth a set of principles defining § 226's permissible reach – the "*Ward* test". United subsequently challenged the validity of applying § 226 to these plaintiffs under the *Ward* test, arguing that federal law precluded California from applying its wage statement law to interstate transportation workers who are based in California and do not perform a majority of their work in any one State.

The dormant Commerce Clause limits the States' authority to enact or enforce laws that burden interstate commerce. Generally, state laws that discriminate against or directly regulate interstate commerce are virtually *per se* invalid, but non-discriminatory laws that have only incidental effects on interstate commerce will generally be

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

upheld.  The panel held that California Labor Code § 226, as applied to these plaintiffs under the *Ward* test, did not fall within either of the categories that are virtually *per se* invalid.    The panel rejected United's argument that application of the *Ward* test resulted in direct regulation of interstate commerce.   The panel also rejected United's argument that applying California Labor Code § 226 to these plaintiffs under the *Ward* test violated the dormant Commerce Clause because the burden imposed on interstate commerce was clearly excessive in relation to the putative local benefits.

The panel held that the Airline Deregulation Act of 1978 did not preempt application of California Labor Code § 226 to these plaintiffs where any connection between § 226 and United's prices, routes, and services was tenuous at best.

The panel held that plaintiffs' claims under California Labor Code § 226 were not preempted by the Railway Labor Act.  Applying the test in *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 920–21 (9th Cir. 2018),  the panel held that plaintiffs' claims survived the first step because they were not grounded in collective bargaining agreements; nor were they preempted under the second step, since resolution of their claims did not require interpretation of the collective bargaining agreements.

The panel declined to reach the merits of plaintiffs' claims in the first instance, and remanded to the district courts to determine whether United complied with § 226 and, if not, what relief should be awarded.   The panel directed the district courts to modify the class definitions in both cases to conform to the California Supreme Court's definition of § 226's permissible reach, and to modify the class period in the Ward case to extend to the date of judgment.

## COUNSEL

Kirk D. Hanson (argued) and Jeffrey C. Jackson, Jackson Hanson LLP, San Diego, California; Stuart B. Esner and Joseph S. Persoff, Esner Chang & Boyer, Pasadena, California; for Plaintiffs-Appellants.

Adam P. KohSweeney (argued) and Susannah K. Howard, O'Melveny & Myers LLP, San Francisco, California; Robert Siegel, O'Melveny & Myers LLP, Los Angeles, California; for Defendant-Appellee.

Douglas W. Hall, Shay Dvoretzky, and Vivek Suri, Jones Day, Washington, D.C., for Amicus Curiae Airlines for America.

## OPINION

WATFORD, Circuit Judge:

These consolidated cases involve pilots and flight attendants who allege that their employer, United Airlines, is violating a provision of California law regulating the wage statements that employees must receive with each paycheck. *See* Cal. Labor Code § 226. When we first heard this appeal, we were uncertain whether California Labor Code § 226 applies to United's pilots and flight attendants, given that they spend most of their time working outside of California. The California Supreme Court accepted our request for clarification of this issue and held that § 226 applies to these employees because they are based in California for work purposes. Now that the cases are back before us, United contends that federal law precludes California from applying its wage-statement law to pilots and flight attendants who

spend most of their time working outside of California. We reject that contention.

## I.  Background

These two consolidated cases were filed in different district courts but are founded on the same allegations. In one, plaintiff Charles Ward represents a certified class of United pilots who reside in California; in the other, plaintiffs Felicia Vidrio and Paul Bradley represent a certified class of United flight attendants who also reside in California. In both cases, plaintiffs allege that the wage statements they receive from United fail to comply with California Labor Code § 226. That statute requires an employer to provide its employees with a wage statement containing nine items of information, including, as relevant here, "the name and address of the legal entity that is the employer," and "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Cal. Labor Code § 226(a)(8)–(9). Section 226 further provides that an employee must be able to "promptly and easily determine" these items of information "from the wage statement alone," which means that "a reasonable person would be able to readily ascertain the information without reference to other documents or information." § 226(e)(2)(B)–(C).

Plaintiffs allege that United's wage statements fail to comply with § 226's requirements. According to plaintiffs, the wage statements do not provide the required address for United because the statements list only a post office box rather than the actual street address where United's offices are located. As for the hourly rates and hours worked, the statements include the wages earned in general pay categories such as "Regular Pay" and "Sick Pay," but they do not list the pay rates and number of hours worked in each

category. United provides its employees with online access to a separate "pay register," which affords greater detail about the employee's work activities and potential compensation during the relevant pay period. The parties dispute whether the pay registers supply the information required by California Labor Code § 226, but we need not resolve that dispute here. Plaintiffs contend that, even if the pay registers adequately describe the number of hours worked at each applicable hourly rate, United's wage statements still violate § 226 because that information cannot be readily ascertained by consulting the wage statements alone.

In both cases, after the parties filed cross-motions for summary judgment, the district courts granted summary judgment for United. Both courts examined California case law and held that California Labor Code § 226 applies only to employees who work "principally" in California, which is not true of either the pilots or the flight attendants. For example, in 2014 and 2015, the pilots spent on average less than 12% of their flight time within California, and in 2015 and 2016, the flight attendants spent on average less than 17% of their flight time within California. The nature of their flight schedules is such that the pilots and flight attendants typically do not work a majority of their time in *any* State, let alone in California. In view of those facts, the district court in the *Ward* case also held that applying § 226 to United's pilots would violate the dormant Commerce Clause of the United States Constitution. The plaintiffs in both cases appealed.

As noted, we certified to the California Supreme Court the question whether California Labor Code § 226 applies in these circumstances. *See Ward v. United Airlines, Inc.*, 889 F.3d 1068 (9th Cir. 2018). In response, the California

Supreme Court held that the statute applies "if the employee's principal place of work is in California." *Ward v. United Airlines, Inc.*, 466 P.3d 309, 325 (Cal. 2020). The court concluded that California qualifies as an employee's principal place of work if: (1) the employee works a majority of the time in California; or (2) with respect to interstate transportation workers who do not work a majority of the time in any one State, "the worker has his or her base of work operations in California." *Id.* The court further stated that an employee is "based in" California for purposes of this test if the employee performs at least some work in California and "California serves as the physical location where the worker presents himself or herself to begin work." *Id.* at 321; *see also id.* at 324 ("[I]f a pilot or flight attendant has a designated home-base airport, section 226 would apply if that airport is in California, and not if it is elsewhere."). We will refer to this set of principles defining § 226's permissible reach as the "*Ward* test" for short.

Following the California Supreme Court's decision, we asked the parties to submit supplemental briefs assessing its impact on the outcome of this appeal. The parties in both cases agree that most of the class members satisfy the *Ward* test, as they do not perform a majority of their work in any one State and they have their "base of work operations" in California. United's pilots and flight attendants are assigned to a designated home-base airport, which is where they are based for purposes of bidding on assignments and where they begin and end their assignments in each bid period. Most, if not all, of the class members are assigned to a home-base airport in California.

United argues that, even though the California Supreme Court has now clarified that California Labor Code § 226 applies in these cases, we should still affirm the judgments

in its favor.  Although United does not challenge the validity
of § 226 itself, it does challenge the validity of applying
§ 226 to these plaintiffs under the *Ward* test.  In United's
view, federal law precludes California from applying its
wage-statement law to interstate transportation workers who
are based in California and do not perform a majority of their
work in any one State.  United's argument rests on three
sources of federal law: the dormant Commerce Clause, the
Airline Deregulation Act, and the Railway Labor Act.  We
reject United's reliance on each of these potentially
preemptive sources of federal law, before turning to several
issues that will need to be addressed on remand.[1]

## II.  Dormant Commerce Clause

The dormant Commerce Clause limits the States'
authority to enact or enforce laws that burden interstate
commerce, even in the absence of legislative action by
Congress.  *American Trucking Associations, Inc. v.
Michigan Public Service Commission*, 545 U.S. 429, 433
(2005); *Raymond Motor Transportation, Inc. v. Rice*,
434 U.S. 429, 440 (1978).  Those limits are delineated by
two general rules.  On one hand, state laws that discriminate
against or directly regulate interstate commerce are virtually
*per se* invalid.  *Department of Revenue of Kentucky v. Davis*,
553 U.S. 328, 338 (2008); *Brown-Forman Distillers Corp.
v. New York State Liquor Authority*, 476 U.S. 573, 579
(1986).  On the other hand, non-discriminatory laws that
have only incidental effects on interstate commerce will

---

[1] Although principles of constitutional avoidance require us to
consider the statutory preemption arguments before the constitutional
dormant Commerce Clause arguments, we address the dormant
Commerce Clause issue first because that issue was the only one of the
preemption questions decided by the district court in *Ward* and was the
focus of the parties' supplemental briefs.

generally be upheld "unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

### A

The first question is whether California Labor Code § 226, as applied to these plaintiffs under the *Ward* test, falls within either of the categories of state laws that are virtually *per se* invalid.

We can quickly dismiss any suggestion that application of the *Ward* test results in discrimination against interstate commerce. Discrimination in this context means treating similarly situated in-state and out-of-state economic interests differently in a way that favors the in-state interests. *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013). The *Ward* test is non-discriminatory because it imposes burdens on private employers evenhandedly, whether they are based in-state or out-of-state. *See CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 87 (1987); *Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 948 (9th Cir. 2013). United is incorporated in Delaware and has its headquarters in Illinois, but it would be subject to the same burdens imposed under the *Ward* test even if it were based in California.

Nor do we find merit in United's argument that application of the *Ward* test results in direct regulation of interstate commerce. United's argument hinges on a line of Supreme Court cases invalidating state laws that had the practical effect of directly regulating commerce occurring wholly outside the enacting State's borders. *See Healy v. Beer Institute*, 491 U.S. 324, 336 (1989); *Brown-Forman*,

476 U.S. at 578–79, 582–83; *Edgar v. MITE Corp.*, 457 U.S. 624, 641–43 (1982) (plurality opinion); *Baldwin v. G. A. F. Seelig, Inc.*, 294 U.S. 511, 521–22 (1935). United contends that, by permitting application of California Labor Code § 226 to pilots and flight attendants who perform most of their work outside of California, the *Ward* test allows California to regulate commerce occurring wholly outside its borders.

Our circuit's law casts doubt on the continued viability of the broad extraterritoriality principle on which United relies. In *Pharmaceutical Research and Manufacturers of America v. Walsh*, 538 U.S. 644 (2003), the Supreme Court suggested that the rule applied in *Healy* and *Baldwin* is limited to cases involving "price control or price affirmation statutes." *Id.* at 669. We have read the Court's decision in *Pharmaceutical Research* as holding that the extraterritoriality principle derived from the *Healy* line of cases now applies only when state statutes have the practical effect of dictating the price of goods sold out-of-state or tying the price of in-state products to out-of-state prices. *See Association des Eleveurs de Canards*, 729 F.3d at 951. Under that narrow understanding, United's extraterritoriality challenge obviously fails.

But even under a broad understanding of the extraterritoriality principle, United's challenge lacks merit. California Labor Code § 226 dictates the information that must be disclosed to employees regarding their hours and pay. The statute thus regulates an incident of the employment relationship between employer and employee, and the relationship itself is best viewed as the aspect of "commerce" being regulated here. In this context, as in the context of state taxation of interstate transactions, the analysis required under the dormant Commerce Clause

largely tracks the analysis that would be required under the Fourteenth Amendment's Due Process Clause. *See South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2093 (2018). The salient question, then, is whether California's ties to the employment relationship are sufficiently strong to justify its assertion of regulatory authority over the contents of an employee's wage statements. *See Sam Francis Foundation v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015) (en banc) (holding that residency of the seller alone was an insufficient nexus to support regulation of out-of-state art sales and implying that a stronger connection could justify regulation); *cf. Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985) (concluding that, to assert legislative jurisdiction over a matter in accordance with the Due Process Clause, a "State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair").

Under the *Ward* test, California's ties to the employment relationship are sufficiently strong to justify application of § 226's disclosure requirements. Notably, in devising the *Ward* test, the California Supreme Court rejected the argument that application of § 226 should depend on residency of the employee alone. *See Ward*, 466 P.3d at 323–24. Instead, employees covered by the *Ward* test must be based for work purposes in California and perform at least some work in California. *Id.* at 324. Those contacts with the employment relationship are significant enough to give the State an interest in ensuring that employees who belong to this subset of its workforce receive the information they need to determine whether they have been paid correctly. The nexus between the State and the employment relationship is not so "casual" or "slight"—as would be true if California were attempting to regulate commerce

occurring *wholly* outside its borders—as to render application of California's wage-statement law arbitrary or unfair. *Clay v. Sun Insurance Office, Ltd.*, 377 U.S. 179, 182 (1964).

Our decision in *S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461 (9th Cir. 2001), supports this conclusion. There, we rejected a dormant Commerce Clause challenge to a San Francisco ordinance requiring city contractors to provide certain benefits to their employees, including employees who performed all of their work in another State. *Id.* at 469–71. We construed the ordinance to apply to out-of-state employees only if they worked directly on a city contract, and held that with respect to such employees the city had a sufficient nexus to the employment relationship to permit regulation of the employees' benefits. *Id.* Here, the nexus between the employment relationship and California is at least as strong, since employees covered by the *Ward* test must perform some of their work in-state and be based for work purposes in California. As in *S.D. Myers*, the fact that most of the employees' work is performed outside of California does not render regulation of an incident of their employment relationship with United violative of the dormant Commerce Clause.

## B

United next contends that applying California Labor Code § 226 to these plaintiffs under the *Ward* test violates the dormant Commerce Clause because the burden imposed on interstate commerce is "clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142. United asserts that compliance with the *Ward* test will require it to track every employee's hours on a pay-period-by-pay-period basis to determine whether each employee spent more than 50% of his or her time working in another State and thus was

exempt from § 226's coverage.  The increased cost United will incur to develop this tracking system, the argument runs, constitutes the sort of substantial burden on interstate commerce that the dormant Commerce Clause forbids.

United's argument is flawed in at least two respects. First, while we do not doubt that United would incur additional costs if forced to track employee time in the way that it describes, it has offered no evidence of what the magnitude of those costs might be.  *See Pacific Northwest Venison Producers v. Smitch*, 20 F.3d 1008, 1015 (9th Cir. 1994).  The mere fact that a firm engaged in interstate commerce will face increased costs as a result of complying with state regulations does not, on its own, suffice to establish a substantial burden on interstate commerce. *Raymond Motor*, 434 U.S. at 445 n.21.  Second, we think United has greatly exaggerated the burden of complying with the *Ward* test in any event.  United can easily comply with California law by issuing § 226-compliant wage statements to all pilots and flight attendants whose home-base airport is located in California.  Adopting that policy would obviate any need to track the hours each employee spends working in different States, and would (at worst) result in rare instances in which United over-complies with California law by issuing a § 226-compliant wage statement to a California-based employee when it was not required to do so.

United also contends that if we uphold application of the *Ward* test here, it will inevitably be subjected to a patchwork of inconsistent regulations imposed by other States.  To prevail on this contention, United must show that § 226, as applied under the *Ward* test, regulates in an area that requires national uniformity.  *See Association des Eleveurs de Canards*, 729 F.3d at 952.  It has not done so.  Even if there

are aspects of the interstate transportation industry that require national uniformity, employee wage statements are not among them. State-by-state regulation of the wage statements provided to pilots and flight attendants may increase operating costs, but United has not demonstrated that such regulation will impair the free flow of commerce across state borders or impede operation of the national airline industry. For example, United has presented no evidence to support the conclusion that requiring it to comply with California law that differs from the wage-statement laws of other States will prove so cost-prohibitive as to disrupt the interstate service of its flights. Thus, as applied under the *Ward* test, § 226 is not comparable to the regulations found to impose a significant burden on interstate commerce in cases like *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 527–28 (1959) (invalidating state regulation of truck mudflaps), and *Southern Pacific Co. v. Arizona ex rel. Sullivan*, 325 U.S. 761, 773–74 (1945) (same as to state law regulating train lengths). In those cases, the challengers demonstrated that inconsistent state regulations would severely disrupt operation of interstate transportation and shipping, such that nationally uniform regulations were "practically indispensable to the operation of an efficient and economical" system. *Southern Pacific*, 325 U.S. at 771. United has not made a showing of that sort here.

Since United has not shown that the *Ward* test regulates in an area that requires national uniformity, or that the cost of compliance otherwise impairs the free flow of goods or services across state borders, it has not shown a significant burden on interstate commerce. *See National Association of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1154–55 (9th Cir. 2012). As a result, any burden imposed by the *Ward* test cannot be deemed "clearly excessive" in relation

to the putative local benefits of applying California Labor Code § 226 to the employees involved here. *Id.* at 1155.

### III.  Airline Deregulation Act

United argues that application of California Labor Code § 226 to pilots and flight attendants covered by the *Ward* test is preempted by the Airline Deregulation Act of 1978 (ADA). As relevant here, the ADA provides that a State "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). United contends that requiring it to comply with California Labor Code § 226 would affect its prices, routes, and services by increasing its costs and influencing its decisions about flight routes.

Although the ADA has a "broad pre-emptive purpose," it does not preempt state laws that affect airline rates, routes, or services in only a "tenuous, remote, or peripheral" manner. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 390 (1992). Laws that apply to airline employees only as they apply to all members of the general public typically fall into this non-preempted category. *See Rowe v. New Hampshire Motor Transport Association*, 552 U.S. 364, 375–76 (2008).[2]

---

[2] *Rowe* assessed whether provisions of Maine's Tobacco Delivery Law were preempted by the Federal Aviation Administration Authorization Act (FAAAA). Because that statute includes the same language used in the ADA, both the Supreme Court and our court rely on FAAAA preemption precedent in ADA preemption cases and vice versa. *See, e.g.*, *Rowe*, 552 U.S. at 370–71; *California Trucking Association v. Su*, 903 F.3d 953, 960 (9th Cir. 2018).

Our most on-point application of this preemption standard came in *Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014). There, we held that provisions of the California Labor Code that regulate rest and meal breaks were not "related to" prices, routes, or services—and thus were not preempted by the FAAAA—when applied to motor carriers. *Id.* at 640. Recounting the history of the Supreme Court's and our court's interpretations of ADA and FAAAA preemption, we noted that those laws preempt state regulations that bind carriers to specific prices, routes, or services, but they do not preempt "generally applicable background regulations that are several steps removed from prices, routes, or services." *Id.* at 646. Wage laws and safety regulations are examples of these generally applicable regulations, and they are not preempted "even if employers must factor those provisions into their decisions about the prices that they set" or "if they raise the overall cost of doing business." *Id.* The meal and rest break laws at issue in *Dilts* were the sort of background rules that apply to almost all employees. Even though those laws may have required employers to take their requirements into account when scheduling routes, they did not bind motor carriers to specific prices, routes, or services. Thus, they were not the sorts of laws that the FAAAA or ADA preempt. *Id.* at 647.

For the same reasons, the ADA does not preempt application of California Labor Code § 226 to these plaintiffs. United again asks us to assume that application of § 226 will increase the overall cost of doing business by requiring it to track the amount of time pilots and flight attendants spend working in each State. Even accepting that assumption, however, what proves dispositive here is that United has presented no evidence that these increased costs would have a "significant impact" on its prices, routes, or services. *Rowe*, 552 U.S. at 375. That United must apply

§ 226 to employees whose work crosses state lines does not distinguish this case from *Dilts*, which upheld application of the laws at issue to all motor carriers, not just the intrastate drivers employed by the defendant. *See Dilts*, 769 F.3d at 648 n.2. Even as applied to the interstate transportation workers involved here, any connection between § 226 and United's prices, routes, and services is tenuous at best. *See Air Transport Association of America v. City and County of San Francisco*, 266 F.3d 1064, 1072 (9th Cir. 2001) (holding that a city ordinance regulating employee benefits was not preempted by the ADA even if it would increase airlines' cost of doing business at an airport in that city).

## IV. Railway Labor Act

Finally, United argues that the Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq.*, preempts plaintiffs' claims. The RLA establishes a mandatory dispute-resolution mechanism for resolving certain classes of labor disputes that arise in the rail and airline industries, including what are known as "major" and "minor" disputes. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252–53 (1994). Minor disputes, the sort potentially implicated here, "involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *Id.* at 253; *see* 45 U.S.C. § 151a(5). If such a dispute is covered by the RLA, it must be resolved through the procedures established under the Act; it may not be resolved by pursuing state-law claims in court. *Hawaiian Airlines*, 512 U.S. at 253.

Both the pilots and flight attendants are covered by existing collective bargaining agreements (CBAs) that contain detailed provisions governing, among other things, the manner in which their pay is determined. United contends that the wage-statement dispute at issue here

constitutes a "minor" dispute under the RLA, thereby triggering RLA preemption.

Our court applies a two-step test to determine whether the RLA preempts a state-law claim. First, we determine whether the claim is "grounded in" a CBA by asking whether the claim "seeks purely to vindicate a right or duty created by the CBA itself." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 920–21 (9th Cir. 2018) (en banc). The RLA preempts state-law claims under this first step if the CBA is the only source of the right the plaintiff asserts; claims that merely refer to a CBA-defined right or that rely only in part on a CBA's terms are not preempted. *Id.* at 921. Second, if a claim is not preempted under the first step, we ask whether adjudicating the state-law claim requires "interpretation of a CBA, such that resolving the entire claim in court threatens the proper role of grievance and arbitration." *Id.* Interpretation in this context "means something more than 'consider,' 'refer to,' or 'apply.'" *Id.* State-law claims are preempted under this second step only "to the extent there is an active dispute over the meaning of contract terms." *Id.*

Applying the *Schurke* test here, we conclude that plaintiffs' claims under California Labor Code § 226 are not preempted by the RLA. Plaintiffs' claims survive under the first step because they are not "grounded in" the CBAs: They seek to vindicate a right created by California law, not one created by the CBAs themselves. Nor are plaintiffs' claims preempted under the second step, since resolution of their claims does not require interpretation of the CBAs. In assessing whether plaintiffs should prevail on the merits of their claims, a court will simply need to examine the wage statements plaintiffs received from United to determine if the statements comply with the requirements of § 226. A court will not need to interpret the meaning of any terms of the

CBAs to determine whether the wage statements include United's name and address or an itemized statement of the hours worked and the applicable hourly rates. Cal. Labor Code § 226(a). Because no interpretation of the CBAs will be required to resolve plaintiffs' claims, the claims are not preempted under the second step of the *Schurke* analysis either.

## V.  Remaining Issues

Given their rulings that California Labor Code § 226 did not apply in these cases, neither of the district courts reached the merits of plaintiffs' claims. Plaintiffs nonetheless urge us to resolve the merits of their claims and to hold that United's wage statements violate § 226. We do not think it would be prudent for us to issue a ruling on liability in the first instance. That is a matter the district courts are best positioned to decide, after receiving whatever further briefing and evidentiary submissions from the parties may be appropriate. Accordingly, we remand to the district courts to determine whether United complied with § 226 and, if not, what relief should be awarded.

On remand, the class definitions in both cases will need to be modified to take account of the California Supreme Court's intervening decision in *Ward*. Under the *Ward* test, United's pilots and flight attendants are entitled to the protections of § 226 if their "designated home-base airport" is in California and if they do not work more than half the time in another State. *Ward*, 466 P.3d at 324. Most of the class members in these cases will likely meet this test. However, the certified classes are currently defined not by the requirements of the *Ward* test, but instead by whether the employees reside in California. We remand for the district courts in both cases to modify the class definitions so that

they conform to the California Supreme Court's definition of § 226's reach.

A further modification of the class definition in the *Ward* case is also warranted. The district court in that case denied without explanation plaintiffs' request to modify the class period so that it will extend until the date that judgment is entered, rather than ending on the date that the complaint was filed. We see nothing in the record to support the court's refusal to grant plaintiffs' request. Ending the class period on the date that the complaint was filed would thwart judicial efficiency by leaving open the potential need for a second lawsuit asserting identical claims covering the period between the complaint's filing and the date final judgment is entered in this litigation. We remand to the district court in the *Ward* case with instructions to modify the class period to extend to the date of judgment.

\*          \*          \*

We reverse the district courts' entry of summary judgment in favor of United and hold that (1) California Labor Code § 226 applies to the class members in both cases provided they meet the requirements of the *Ward* test; and (2) applying § 226 in accordance with the *Ward* test does not violate the dormant Commerce Clause, the Airline Deregulation Act, or the Railway Labor Act. We remand to the district courts to consider in the first instance whether United's wage statements violate § 226, to modify the class definitions in both cases to conform to the California Supreme Court's definition of § 226's permissible reach, and to modify the class period in the *Ward* case to extend to the date of judgment.

**REVERSED and REMANDED.**