

FILED

JUL 29 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AIR TRANSPORT ASSOCIATION OF AMERICA, INC., DBA Airlines for America,

Plaintiff-Appellant,

v.

THE WASHINGTON DEPARTMENT OF LABOR AND INDUSTRIES; JOEL SACKS, in his official capacity as Director of the Department of Labor and Industries,

Defendants-Appellees,

ASSOCIATION OF FLIGHT ATTENDANTS - COMMUNICATION WORKERS OF AMERICA, AFL-CIO,

Intervenor-Defendant-Appellee.

No.    19-35937

D.C. No. 3:18-cv-05092-RBL
Western District of Washington, Tacoma

ORDER

Before:  GOULD and FRIEDLAND, Circuit Judges, and BOUGH,* District Judge.

The Memorandum Disposition filed on May 21, 2021, is amended as set out in the attached Amended Memorandum Disposition filed concurrently with this order.  With the concurrently filed amended memorandum, Judges Gould and Friedland have voted to deny the petition for rehearing en banc, and Judge Bough

_____

*    The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri, sitting by designation.

so recommends.  The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc.  Fed. R. App. P. 35.  The petition for rehearing en banc is **DENIED**.

No further petitions for panel rehearing or rehearing en banc will be entertained.

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 29 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| AIR TRANSPORT ASSOCIATION OF AMERICA, INC., DBA Airlines for America, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> THE WASHINGTON DEPARTMENT OF LABOR AND INDUSTRIES; JOEL SACKS, in his official capacity as Director of the Department of Labor and Industries, <br><br> Defendants-Appellees, <br><br> ASSOCIATION OF FLIGHT ATTENDANTS - COMMUNICATION WORKERS OF AMERICA, AFL-CIO, <br><br> Intervenor-Defendant-Appellee. | No. 19-35937 <br><br> D.C. No. 3:18-cv-05092-RBL <br><br> AMENDED MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted November 17, 2020
Seattle, Washington

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: GOULD and FRIEDLAND, Circuit Judges, and BOUGH,** District Judge.

The Air Transport Association (d/b/a "Airlines for America" or "A4A") has brought this action against Washington's Department of Labor and Industries ("L&I"), seeking to enjoin enforcement of Washington's law governing paid sick leave, Wash. Rev. Code § 49.46. 210 (2021).[1] A4A argues that applying the paid sick leave law (the "PSL") to its members' flight attendants and pilots ("flight crew") is preempted by the Airline Deregulation Act, 49 U.S.C. § 41713, and violates the dormant Commerce Clause.[2] The parties filed cross-motions for summary judgment, and the district court granted L&I's motion. We affirm.

In 2016, voters in Washington enacted a ballot initiative that established a right to paid sick leave "to protect public health and allow workers to care for the

**      The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri, sitting by designation.

[1] A4A is a trade association that represents U.S. air carriers Alaska, American, Atlas, Delta, FedEx, Hawaiian, JetBlue, Southwest, United, and UPS. The Association of Flight Attendants-Communication Workers of America, AFL-CIO, intervened as a Defendant to represent the interests of its members. In addition, eighteen states and the District of Columbia filed a brief as amici curiae in support of L&I. Alaska Airlines filed a brief as amicus curiae in support of A4A.

[2] Although the PSL took effect 2018, A4A's counsel stated that Alaska Airlines—which is possibly the only airline to which this law applies, *see infra*—is not complying with the PSL as to flight crew. L&I has not initiated any enforcement actions against A4A's members, despite their lack of compliance, because it has not received any formal complaints.

2

health of themselves and their families." Wash. Rev. Code § 49.46.005. The PSL requires that employers provide Washington-based employees at least one hour of paid sick leave for every forty hours worked. *Id.* § 49.46.210(1)(a). In addition, the law prohibits employers from penalizing employees for using sick leave—such as through a disciplinary point system—or requiring medical verification for sick leave absences of fewer than three days. *Id.* § 49.46.210(3); Wash. Admin. Code § 296-128-660(1).

A4A argues that compliance with the PSL will deprive the airlines of their "most important" tools for minimizing flight crew shortages, including disciplinary point systems and medical verification requirements, thereby causing flight delays and cancellations. In support, A4A points to Virgin America's experience complying with New York City's Earned Sick Time Act ("ESTA"), which contains provisions similar to those in the PSL.[3] A4A's expert estimated that Virgin America's compliance with the ESTA led to a "cabin crew delay rate" increase of .16 percentage points for the first two years and 1.2 percentage points for the seven months thereafter.

1. The Airline Deregulation Act ("ADA") does not preempt the application

---

[3] Because A4A appeals from the district court's order granting summary judgment to L&I, we view the facts and the reasonable inferences drawn from them in the light most favorable to A4A. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

of the PSL to A4A's members' flight crew. The ADA preempts state laws "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b). State laws that affect rates, routes, or services in "too tenuous, remote, or peripheral a manner" are not preempted. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983)). We have held that generally applicable labor regulations are too tenuously related to airlines' services to be preempted by the Act. *See Ward v. United Airlines*, *Inc.*, 986 F.3d 1234, 1243 (9th Cir. 2021) ("Laws that apply to airline employees only as they apply to all members of the general public typically fall into th[e] non-preempted category."). The PSL is no exception.

A4A argues that, unlike the wage statement law at issue in *Ward*, the PSL "operates in close proximity to the traveling public." The proper inquiry is whether the PSL itself "*bind*s the [airlines] to a particular price, route, or service." *Bernstein v. Virgin Am., Inc.*, --- F.4th ---, 2021 WL 3047171, at *9 (9th Cir. 2021) (quoting *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 646 (9th Cir. 2014)). The PSL regulates the airline-employee relationship in a way that may ultimately affect the airlines' competitive decisions in the free market. But because the PSL does not regulate the airline-customer relationship or otherwise bind the airlines to a particular price, route, or service, it is not preempted by the ADA. *See Air Transp. Ass'n v. City & County of San Francisco*, 266 F.3d 1064, 1074 (9th Cir. 2001).

4

2. As applied to A4A's members' flight crew, the PSL does not violate the dormant Commerce Clause. To survive L&I's motion for summary judgment, A4A must show that there is a genuine issue of material fact as to whether complying with the PSL would impose a "substantial burden on interstate commerce," and if so, whether the burden on interstate commerce would be "clearly excessive in relation to the putative local benefits."[4] *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1155-56 (9th Cir. 2012) (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). Viewing the evidence in the light most favorable to A4A, we hold that the evidence does not demonstrate that requiring A4A's members to comply with the PSL would impose a substantial burden on interstate commerce.

A4A argues that Virgin America's experience complying with the ESTA shows that complying with the PSL would increase unexpected employee absences, which would result in increased flight delays and cancellations. Even assuming that complying with the PSL would lead to the same result for A4A's members that Virgin America experienced complying with the ESTA, A4A's expert's conclusions are insufficient to raise a genuine issue of material fact. A 1.2 percentage point increase in flight delays—with many of those delays lasting fewer than fourteen minutes—is not a substantial burden on interstate commerce for

---

[4] The parties agree that the PSL is not facially discriminatory.

dormant Commerce Clause purposes, particularly for an industry that anticipates delays at much higher rates under ordinary circumstances. A4A's other arguments about the effects of complying with sick leave policies in other states fail for the same reason, and they are based solely on anecdotes.

Separately, A4A argues that complying with multiple states' paid sick leave laws would be impossible or prohibitively expensive for its members. We rejected a similar argument in *Ward*. We explained that "[t]o prevail on this contention," airlines must show that the challenged law "regulates in an area that requires national uniformity." *Ward*, 986 F.3d at 1242. Like the wage statement laws at issue in *Ward*, paid sick leave laws are not among the "aspects of the interstate transportation industry that require national uniformity." *Id.* Although A4A has submitted evidence that complying with paid sick leave laws may result in some increase in flight delays and cancellations, this evidence falls short of demonstrating that complying with the PSL will "severely disrupt operation of interstate transportation." *Id.*; *see also Bernstein*, 2021 WL 3047171, at *4-5.

Furthermore, the PSL's limited scope undermines A4A's argument as to the impossibility of complying with multiple paid sick leave laws. The PSL only applies to "Washington-based employees" of employers "doing business in Washington." An L&I official testified that flight crew members who are not "based" at a Washington airport and who have no relationship with Washington

6

other than flying in and out of the state are "unlikely to be Washington-based employees." Based on this testimony, we deduce that the PSL primarily—or perhaps solely—applies to employees of Alaska Airlines, which is headquartered in Washington and is the only A4A member airline that has an airport "base" in the state.[5] A4A does not present any concrete examples of Alaska Airlines employees who would be covered by multiple paid sick leave laws if A4A's members were to comply with the PSL. To the extent that Washington-based flight crew are determined to be covered by multiple jurisdictions' laws, an airline could avoid potential concerns by choosing to comply with the law that imposes the strictest requirements. *See Ward*, 986 F.3d at 1242.[6]

**AFFIRMED.**

---

[5] In an amicus brief, Alaska Airlines states that it has hundreds of employees who live in Washington and are based in other states, and vice versa. But this information fails to demonstrate that any of these employees would actually be subject to multiple states' laws.

[6] According to A4A, adopting the strictest paid sick leave law to avoid a conflict would violate the dormant Commerce Clause by allowing states to regulate beyond their borders. "Our circuit's law casts doubt on the continued viability of the broad extraterritoriality principle" that A4A invokes. *Ward*, 986 F.3d at 1240. But even if the extraterritoriality principle were to apply here, it would not be violated because the PSL applies only to "Washington-based" employees of employers "who are doing business in Washington." *See id.* at 1240-41 (holding that "even under a broad understanding of the extraterritoriality principle," California's application of its wage statement law to flight crew who were California-based was sufficiently strong to pass constitutional muster).

7